# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DEERPOINT GROUP, INC.,** | **CASE NO. 1:18-CV-0536 AWI BAM** |
| **Plaintiff** | |
| v. | **ORDER ON PLAINTIFF'S MOTION FOR RECONSIDERATION** |
| **AGRIGENIX, LLC and SEAN MAHONEY,** | (Doc. No. 50) |
| **Defendants** | |

This is a business dispute involving intellectual property and trade secrets between Plaintiff Deerpoint Group, Inc. ("Deerpoint") and Defendants Agrigenix, LLC ("Agrigenix") and Sean Mahoney ("Mahoney"). This Court has previously granted in part and denied in part two Rule 12(b)(6) motions filed by Defendants. Deerpoint moves the Court to reconsider a ruling from the first motion to dismiss that resulted in the dismissal of 18 U.S.C. § 1836 (Defend Trade Secrets Act ("DTSA")) and Cal. Civ. Code § 3426.1 et seq. (California Uniform Trade Secrets Act ("CUTSA")) claims against Mahoney with prejudice. For the reasons that follow, Deerpoint's motion will be denied.

## **FACTUAL BACKGROUND**

From the First Amended Complaint, Deerpoint is in the business of chemical water treatment solutions for agriculture irrigation. Deerpoint custom builds each chemical feed system for each site and utilizes integrated systems of fertilizers, which are custom-blended through proprietary methods, and applied to crops through data-controlled mechanical delivery systems. Deerpoint's fertilizers are tailored to a variety of crops and conditions. Further, at the heart of

Deerpoint's fertigation[1] program is patented precision feeding equipment, which has been nicknamed the "White Box." Deerpoint has invested millions of dollars customizing its fertilizers, foliar products, and equipment to a wide range of crops and environments, and archives its products and services for the growers that use its services. The confidential, proprietary, and trade secret nature of Deerpoint's fertilizer and foliar blends is essential to Deerpoint's business, and is the source of much business goodwill.

Since Deerpoint's founding in 1993, it has required its employees and executives to execute a detailed confidentiality agreement, the Employees Invention and Secrecy Agreement (the "EIS"). Deerpoint steadfastly enforces the EIS. Since at least 2000, every employee signs the EIS. Deerpoint's employee handbook also contains policies relating to confidentiality, and in 2016, Deerpoint implemented a new-hire training program that highlighted its policies, including the confidentiality policies. Deerpoint also regulates the access and exchange of information within the company, restricts access to certain information, and ensures that its confidential information is confined to company-owned computers.

Until October 4, 2017, Mahoney was the Chief Executive Officer of Deerpoint. Mahoney signed the EIS and an updated EIS in 2016. Despite the EIS, Mahoney acted to gain access to, and download from, a central computer of Deerpoint's confidential, proprietary, and trade secret information. Mahoney and Deerpoint mutually terminated his employment on October 4, 2017.

On October 3, 2017, Mahoney filed a lawsuit in the Fresno County Superior Court against Deerpoint ("the Lawsuit"). On October 7, 2017, Mahoney filed an administrative complaint with the California Department of Fair Housing and Employment against Deerpoint. These matters were stayed pending settlement negotiations.

Sometime in October 2017, Mahoney launched a direct competitor to Deerpoint, Agrigenix. Mahoney is the president and chief executive officer of Agrigenix. Agrigenix states that it provides a full line of nutrients and fertilizer blends formulated with proprietary chemistries. However, the blends are pirated from Deerpoint. Agrigenix also has foliar blends that mimic

---

[1] "Fertigation" refers to a fertilization process whereby fertilizers are added to the water being used to irrigate crops, and reflects a combination of irrigation and fertilization.

Deerpoint. Mahoney and Agrigenix possessed Deerpoint's confidential, proprietary, and trade secret information, and Mahoney founded Agrigenix on trade secrets misappropriated from Deerpoint.

On January 8, 2018, Mahoney and Deerpoint signed a Settlement Agreement ("the Settlement"). The Settlement resolved the Lawsuit and all other claims that Mahoney and Deerpoint had against each other. The Settlement included a provision that Paragraph 3 of the EIS remained in full force, a provision in which Mahoney acknowledged the confidential and proprietary nature of Deerpoint's trade secret information, a provision in which Mahoney agreed not to divulge or use Deerpoint's trade secrets and to take steps to protect such information from disclosure, and to return Deerpoint's property that was in Mahoney's possession.

## **PLAINTIFF'S MOTION**

*Plaintiff's Argument*

Deerpoint argues that reconsideration is warranted in order to prevent manifest injustice. In the first motion, the Court dismissed the CUTSA and DTSA claims against Mahoney with prejudice due to the Settlement, and also found that nothing in the Settlement otherwise acted to provide for future CUTSA or DTSA claims. In the second motion, the Court confirmed that it would read CUTSA and DTSA claims consistently and that laws modeled after the Uniform Trade Secrets Act ("UTSA") should be read consistently. Deerpoint contends that courts interpreting trade secret laws, including the California Supreme Court in *Cadence Design Systems, Inc. v. Avant! Corp.*, 29 Cal.4th 215 (2002), hold that trade secrets are protected through confidential relationships. Because it is the confidential relationship that is important, Deerpoint and Maloney's reaffirmation of the EIS obligations created a new confidential relationship. The new confidential relationship means that new DTSA and CUTSA claims are possible against Mahoney for the previously misappropriated trade secrets. Although the Settlement does not mention the DTSA or CUTSA, it is reasonable to interpret the Settlement's creation of a new confidential relationship as reflecting the intent to make Mahoney liable for future acts of misappropriation of the previously misappropriated trade secrets. Deerpoint argues that with discovery occurring into

3

the intent of the parties in the Settlement regarding third party beneficiaries, and in light of case law recognizing confidential relationships as the basis for trade secret liability/protections, it is manifestly unjust to prevent Deerpoint from pursuing discovery into the parties' intent in the Settlement regarding DTSA and CUTSA claims.

In reply, Deerpoint reiterates the above arguments and states *inter alia* that whether the term "California law" as used in the Settlement is limited to the law of contracts, or whether it reaches the CUTSA, is a question that should be decided on a full record with discovery.

*Defendants' Opposition*

Defendants argues that the motion to reconsider is untimely and inappropriate. First, Defendants contend that the motion for reconsideration was made more than 200 days from the first dismissal order. There is no adequate explanation for either this significant lapse of time or of what circumstances changed between the first dismissal order and the request to reconsider. There is no reason why the arguments now made (which were largely made in prior oppositions) could not have been made earlier. Second, Defendants contend that the Court's prior analyses were correct and that the only trade secret claims that Deerpoint could allege against Mahoney were settled. Defendants argue that Deerpoint is relying on an inapplicable portion of *Cadence Design*, and also emphasize that *Cadence Design* made it clear that a cause of action for trade secret misappropriation against a particular defendant arises only once.

*Relevant Holdings*

In the first motion to dismiss, after quoting from *Cadence Design*, the Court held that:

> [W]hen Deerpoint and Mahoney executed the Settlement, they resolved the one and only CUTSA claim that Deerpoint could bring against Mahoney. Although Mahoney may have continued to misappropriate the trade secrets by disclosing them to Agrigenix or using them to make competing products, those subsequent acts of misappropriation are not separate claims, they merely augment the single claim that Deerpoint could have brought against Mahoney. Because Deerpoint can only have one trade secret misappropriation claim against Mahoney, and that claim was settled on January 8, 2018, the Settlement appears to bar Deerpoint's attempt to bring a CUTSA claim for post-Settlement acts of misappropriation of the same trade secrets.

Deerpoint Grp., Inc. v. Agrigenix, LLC, 345 F.Supp.3d 1207, 1223-24 (E.D. Cal. 2018) (internal citations omitted). The Court then distinguished and declined to follow *Junction Solutions, LLC v.*

4

*MBS Dev., Inc.*, 2007 U.S. Dist. LEXIS 86958 (N.D. Ill. Nov. 21, 2007), a case heavily relied upon by Deerpoint. See id. at 1224. In relevant part, the Court held:

> . . . the *Junction Solutions* court was not certain that the plaintiff intended to release claims arising from the defendants' future use of the trade secrets. This point depends on the ability for claims to arise against the defendants in the future for their use of the trade secrets at issue. However, as quoted above, *Cadence Design* has made it clear that there are no such "future" CUTSA claims for misappropriation. There is only one claim that arises for misappropriation under CUTSA, all "future claims," i.e. subsequent uses or disclosures, merely augment that one claim. Based on *Cadence Design*, for purposes of CUTSA, a separate future misappropriation claim against a single defendant and involving the same previously misappropriated trade secret is a legal impossibility.

Id. at 1225 (internal citations omitted). Finally, in further distinguishing *Junction Solutions* and addressing arguments by Deerpoint regarding recitations in the Settlement, the Court concluded:

> Deerpoint is correct that § 14 of the Settlement in part addresses and reaffirms confidentiality/trade secret provisions of the EIS and requires Mahoney to return "trade secret properties." See id. at ¶¶ 14.3-14.5. However, the Court is not convinced that these aspects of the Settlement are sufficient to preserve/create post-Settlement CUTSA claims. First, CUTSA does not create any affirmative obligations to return trade secrets. That obligation is created by the Settlement. A failure to return misappropriated trade secrets alone violates only the obligations of the Settlement; it violates no provision of CUTSA. Second, the Court is unaware of any place in the Settlement that addresses either obligations or causes of action under CUTSA. The Settlement reaffirms prior contractual obligations and provides for injunctive relief. However, there is no mention of CUTSA or an express attempt within the Settlement to resurrect or create a future CUTSA claim based on previously misappropriated trade secrets. It is unknown why a reaffirmation of a prior contractual obligation, without any reference to CUTSA, should be read as creating new CUTSA claims that would otherwise be contrary to CUTSA itself/*Cadence Design*'s recognition that there is only one misappropriation claim against a single defendant for misappropriation of a particular trade secret. While the Court agrees that the Settlement does not prohibit future actions under "California law" regarding the misappropriated secrets, in the absence of any reference to CUTSA, that law would likely be the California law of contracts, not CUTSA. Under California law, as explained by *Cadence Design*, the parties have resolved Deerpoint's CUTSA claim. If the parties truly intended to create what would be a claim previously unknown to CUTSA through the Settlement, then language that deals with CUTSA specifically should have been used. As it stands, the Court sees future contract related claims implicated by the Settlement, but not CUTSA claims for previously misappropriated trade secrets. Third, while *Cadence Design* held that parties to a release could make it as broad or as narrow as they like, no explanations or examples were given as to what the California Supreme Court envisioned. It seems to the Court that a release may exclude CUTSA claims, or expressly incorporate CUTSA remedies for a breach of the release, or estop a party from raising certain defenses to a CUTSA claim based on the further use of a previously misappropriated trade secret. Such provisions would affect the breadth of the release, prevent the misappropriator from obtaining a *de facto* license, and, at least with respect to the first and third examples, may give an indication that parties intended for a CUTSA claim to persist. However, *Cadence Design* did not hold that merely reaffirming a prior existing contractual obligation in a release would

> have the effect of creating a new CUTSA cause of action where none would otherwise exist. The Court is unaware of any California case that has interpreted the relevant language of *Cadence Design* consistent with Deerpoint's position, and Deerpoint has cited none. Therefore, the Court cannot conclude that the mere fact that prior contractual obligations were reaffirmed, or that Mahoney was obligated to return or destroy Deerpoint property, would create a totally new and heretofore legally unrecognized CUTSA claim.

Id. at 1226-27 (internal citations and footnotes omitted). In a footnote, the Court also noted that Mahoney's alleged misappropriation of trade secrets was a material breach of the employment secrecy agreement, which would have permitted Deerpoint to terminate that contract. See id. at 1227 n.9.

*Legal Standard*

The Ninth Circuit has instructed that motions for reconsideration "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the law." Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th Cir. 2009). "A motion for reconsideration may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." Id. The mere disagreement with the court's prior decision or the mere recapitulation of arguments that were made previously but rejected are not sufficient bases to grant reconsideration. See American States Ins. Co. v. Insurance Co. of Pa., 245 F.Supp.3d 1224, 1227 (E.D. Cal. 2017); Cunningham v. Kramer, 178 F.Supp.3d 999, 1003 (E.D. Cal. 2016). Additionally, Local Rule 230 in relevant part requires a moving party to shows that "new or different facts or circumstances are claimed to exist which did no exist or were not shown upon such prior motion, or what other grounds exist for the motion, and why the facts and circumstances were not shown at the time of the prior motion." Local Rule 230(j); see Cunningham, 178 F.Supp.3d at 1003.

*Discussion*

1. Procedural Issues

There is a procedural problem with Deerpoint's motion. Deerpoint states that the new circumstance justifying reconsideration is the Court's confirmation in the second dismissal order that decisions regarding the single claim theory of trade secret misappropriation should apply

6

consistently between jurisdictions. However, the Court made the same basic holding in the first dismissal order. In both orders, the Court expressly stated that it would apply the CUTSA and DTSA consistently and cited the cases of *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg.*, 805 F.3d 701 (6th Cir. 2015) and *Brand Energy & Infrastructure Servs. v. Irex Contracting Corp.*, 2017 U.S. Dist. LEXIS 43497 (E.D. Pa. Mar. 23, 2017). Cf. Doc. No. 26 at 15:8-16:6 with Doc. No. 48 at 11:5-18. Additionally, Deerpoint's motion is based largely on *Cadence Design* and Deerpoint's interpretation of California law, which would clearly govern the CUTSA claims. Such arguments were available to Deerpoint immediately after the Court's ruling on the first dismissal order. Given the similarity of the Court's holdings in the two dismissal orders, as well as the arguments made in support of reconsideration, it is unclear why the motion for reconsideration could not have been reasonably made prior to the filing of the First Amended Complaint.[2] Cf. Marlyn Pharmaceuticals, 571 F.3d at 880 (movant must show that the motion could not have reasonably been made earlier in the litigation). Therefore, Deerpoint has not adequately explained how the Court's second dismissal order constituted different circumstances, thereby justifying the July 2019 motion to intervene. On this procedural basis, reconsideration is improper. See id.

    2.     Substantive Issues

Alternatively, the substance of Deerpoint's arguments do not warrant reconsideration. Deerpoint's arguments flow from and hinge on a particular passage of *Cadence Design* that discusses trade secrets as protecting a relationship, as opposed to a property interest. See Cadence Design, 29 Cal.4th at 220-21. *Cadence Design* quoted authority from the Ninth Circuit (*Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem. Co.*, 407 F.2d 288 (1969)), California (*Futurecraft v. Clary Corp.*, 205 Cal.App.2d 279 (1962)), and the Supreme Court (*E.I. Du Pont de Nemours Powder Co.*, 244 U.S. 100 (1917)) when it stated that *California common law* does not treat trade secrets as property, but rather the relationship between the parties is protected. See id.

---

[2] There is no express time limit for filing a motion for reconsideration of a non-final order, either in Local Rule 230 or the Federal Rules of Civil Procedure. However, given the reliance on reasonableness, the standard set by *Marlyn Pharmaceuticals* appears to be that a motion for reconsideration should be filed at the earliest reasonable opportunity. See Marlyn Pharaceuticals, 571 F.3d at 880 ("A motion for reconsideration may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.").

(emphasis added). However, context is key. The California Supreme Court was not explaining and elaborating on the current state of the law, rather, it was explaining and recapitulating the appellee's argument. The relevant paragraph begins, "Avant! Argues that . . ."; the very next paragraph begins, "On the other hand, Cadence asserts . . . ." Id. After describing the arguments, *Cadence Design* then stated that neither the appellant's nor the appellee's position was entirely correct and it did not fully adopt either side's position. Id. Thus, the relevant passage that is so critical to Deerpoint's arguments does not constitute any ruling or holding of the court, it is merely a description of the appellee's argument.

The question before *Cadence Design* was: "Under the [CUTSA], when does a claim for trade secret infringement arise: only once, when the initial misappropriation occurs, or with each subsequent misuse of the trade secret?" Id. at 217. The answer to that question was: "We conclude that in a plaintiff's action against the same defendant, the continued improper use or disclosure of a trade secret after a defendant's initial misappropriation is viewed under the [CUTSA] as part of a single claim of 'continuing misappropriation' accruing at the time of the initial misappropriation." Id. In arriving at this conclusion, *Cadence Design* did not rely on the common law of California, rather, it relied on the language of CUTSA and the UTSA, on which the CUTSA is based. See id. at 221 ("In order to answer the certified question, we must examine the pertinent language of the UTSA."). *Cadence Design* specifically analyzed those acts' definition of "trade secret," "misappropriation," "improper means," the limitations period found in CUTSA § 3426.6, and the official comments to the UTSA. See id. at 221-23. *Cadence Design* ultimately concluded:

> From our examination of the above statutes, a distinction between a 'misappropriation' and a 'claim' emerges. A misappropriation within the meaning of the [CUTSA] occurs not only at the time of the initial acquisition of the trade secret by wrongful means, but also with each misuse or wrongful disclosure of the secret. *But a claim for misappropriation of a trade secret arises for a given plaintiff against a given defendant only once, at the time of the initial misappropriation, subject to the discovery rule provided in § 3426.6.* Each new misuse or wrongful disclosure is viewed as augmenting a single claim of continuing misappropriation rather than as giving rise to a separate claim.

Id. at 223 (emphasis added). That is, a claim "for misappropriation of a trade secret against a defendant arises only once, when the trade secret is initially misappropriated, and each subsequent

8

use or disclosure of the secret augments the initial claim rather than arises as a separate claim." Id. at 227.

Cadence Design's reliance on CUTSA/UTSA's language, as opposed to the common law, is logical. CUTSA is broad and comprehensives, it preempts all non-contract civil claims "based on the same nucleus of facts as trade secret misappropriation." K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc., 171 Cal.App.4th 939, 954 (2009); see also Cal. Civ. Code § 3426.7. Thus, "[a]t least as to common law trade secret misappropriation claims, [CUTSA] occupies the field in California." K.C. Multimedia, 171 Cal.App.4th at 954. Because CUTSA has preempted common law trade secret misappropriation claims, it is the language of CUTSA that controls. CUTSA protects "trade secrets" from "misappropriation" and defines those terms. A "trade secret" is "information, including a formula, pattern, compilation, program, device, method, technique, or process that: (1) derives independent economic value, actual or potential, from not being known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d). Nothing in the definition of a "trade secret" is based on confidential relationships, rather, the definition of a "trade secret" is information that has value from not being known and is the subject of efforts to keep it secret. See id. It is those "trade secrets," which "are a form of property," Cadence Design, 29 Cal. 4th at 225, not confidential relationships, that are protected from "misappropriation."

It is true that CUTSA can implicate confidential relationships. For example, one way (but not the only way) that a "trade secret" can be "misappropriated" is when a person uses a trade secret and knows that the secret was derived from a person who owed a duty to the secret's owner to maintain the secret. See Cal. Civ. Code § 3426.1(b)(2)(B)(iii).[3] However, there are a number

---

[3] CUTSA defines "misappropriation" as (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) Disclosure or use of a trade secret of another without express or implied consent by a person who: (A) Used improper means to acquire knowledge of the trade secret; or (B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was: (i) Derived from or through a person who had utilized improper means to acquire it; (ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or (C) Before a material change of his or position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake." Cal. Civ. Code § 3426.1(b).

of other ways to "misappropriate" a trade secret, none of which involve the existence of any relationship, let alone a confidential one. See Cal. Civ. Code § 3426.1(b). One court has observed that, because of the different ways that a "trade secret" can be "misappropriated," "[b]y its plain terms . . . CUTSA incorporates a property approach in that it makes third parties liable even if they had no prior relationships to the owner of the trade secret." Cypress Semiconductor Corp. v. Superior Ct., 163 Cal.App.4th 575, 584 (2008).[4] Defining what constitutes "misappropriation" is an explanation of a prohibited act, it is not protecting a confidential relationship *per se*. Because CUTSA can be violated without a confidential relationship being involved, a viable CUTSA claim depends on whether the statutory requirements have been met, not on whether a confidential relationship exists. Cf. id.

From the above, the Court concludes that *Cadence Design* did not rely on the common law or the existence of any confidential relationship, but instead relied on the language of CUTSA itself, in resolving the issues before it. CUTSA protects "trade secrets" from acts of "misappropriation" and defines what those terms mean. CUTSA occupies the field of non-contractual civil claims for trade secret misappropriation and displaces the old common law. Deerpoint is incorrect that its CUTSA claim depend on the protection of a confidential relationship with Mahoney, either old or renewed; Deerpoint's CUTSA claim depend on the express statutory provisions of CUTSA. CUTSA provides only one claim against a single defendant for the misappropriation of a particular trade secret. That Deerpoint and Mahoney may have created a new confidential relationship in the Settlement does nothing to change the fact that Mahoney had previously misappropriated the relevant "trade secrets," and the Settlement resolved the one possible CUTSA claim for those misappropriations. Neither the actual analysis and holding of *Cadence Design* nor the language of CUTSA provide a mechanism for that new relationship to breathe life into the resolved CUTSA claim. The Court's holdings in the first and second dismissal orders are consistent with these conclusions.

None of the cases by Deerpoint are on point or persuasive. As discussed above, Deerpoint

---

[4] CUTSA did adopt a relationship approach/single claim approach for purposes of the statute of limitations. See Cypress Semiconductor, 163 Cal.App.4th at 585 (". . . CUTSA, which, although it adopted the single-claim approach for purposes of the statute of limitations, did not wholly reject the property view of trade secret law.").

10

relies on a passage from *Cadence Design* that merely explains the appellee's arguments, the passage is not the opinion's actual reasoning or holdings. *Intermedics, Inc. v. Ventritex, Inc.*, 822 F.Supp. 634 (N.D. Cal. 1993) pre-dates *Cadence Design*. The Court has already distinguished *Junction Solutions, LLC v. MBS Dev., Inc.*, 2007 U.S. Dist. LEXIS 86958 (N.D. Ill. Nov. 21, 2007) and continues to find that opinion to be inconsistent with *Cadence Design*. *Hilderman v. Enea Teksci, Inc.*, 551 F.Supp.2d 118 (S.D. Cal. 2008) by Deerpoint's own admission dealt with an "analogous question" concerning a release provision, not the issue of confidential relationships and CUTSA. *Cypress Semiconductor* is actually contrary to Deerpoint's arguments. That case followed *Cadence Design* and noted that CUTSA incorporated in part a "property approach" because it made third parties liable for misappropriation. See Cypress Semiconductor, 167 Cal.App.4th at 584. The "property approach" is the alternative to "the relationship approach." See Cadence Design, 29 Cal.4th at 220-21; Cypress Semiconductor, 163 Cal.App.4th at 582-84. The passage from *Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal.App.4th 1018, 1026-27 (2000), which Deerpoint describes as merely citing *Intermedics* with approval, deals with statute of limitations issues, not whether the CUTSA protects confidential relationships. And, in any event, *Glue-Fold* predates *Cadence Design*.[5] *Aoki v. Gilbert*, 2014 U.S. Dist. LEXIS 101151, *41 (E.D. Cal. July 22, 2014) did hold that "the law dictates that misappropriation of trade secrets be viewed as a single claim regardless of any continuing misappropriation that may have occurred in July 2010 so long as the claim stems from the same relationship." The term "relationship" is key for Deerpoint's purposes. However, *Aoki* does not explain its use of the term "relationship" and it appears only in the cited sentence. What CUTSA protects is "trade secrets," not confidential relationships, from "misappropriation." To the extent that *Aoki*'s reading of CUTSA, *Cadence Design*, and *Cypress Semiconductor* is different from this order, the Court declines to follow it. Finally, *Grow Co., Inc. v. Chokshi*, 403 N.J. Super. 443 (2008) is not persuasive because it does not involve CUTSA or any version of the UTSA.[6]

---

[5] The Court notes that *Cadence Design* cited *Glue-Fold*'s observations regarding CUTSA's substantial adoption of the UTSA. See Cadence Design, 29 Cal.4th at 221.

[6] New Jersey did not adopt a version of the UTSA until January 2012. See N.J. S. A. 56:15-1 et seq.; SCS Healthcare Mktg., LLC v. Allergan USA, Inc., 2012 N.J. Super. Unpub. LEXIS 2704, *7 (Dec. 7, 2012).

11

Without its reading of *Cadence Design*, Deerpoint's argument for reconsideration collapses. The "California law" mentioned in the Settlement could not be CUTSA. This is so because CUTSA protects "trade secrets" from "misappropriation" and defines those terms. *Cadence Design* makes it perfectly clear that a plaintiff has but one CUTSA claim against a single defendant for misappropriation of a particular trade secret. The Settlement resolved the one and only claim that Deerpoint had against Mahoney for misappropriating any trade secret prior to the execution of the Settlement. As the Court explained in the first dismissal order, clearer language was needed if the parties truly intended to permit a viable post-Settlement CUTSA claim based on previously misappropriated trade secrets because such a claim would be either novel or contrary to CUTSA/California law. If a claim is novel or contrary to California law, it cannot reasonably represent existing "California law." Also, the reference to "California law" could not be the California common law of trade secrets misappropriation because CUTSA preempted common law trade secret misappropriation claims. See K.C. Multimedia, 171 Cal.App.4th at 954. Thus, Deerpoint's suggested interpretation of the term "California law" in the Settlement to include or be a reference to confidential relationships that are protected through CUTSA is unreasonable.

In sum, Deerpoint has not shown that the Court's prior analysis is clearly erroneous. In the absence of a clearly erroneous ruling, Deerpoint also has not shown that any manifest injustice would result from the denial of this reconsideration motion. Therefore, the substantive arguments made by Deerpoint do not warrant reconsideration.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that Deerpoint's motion for reconsideration (Doc. No. 50) is DENIED.

IT IS SO ORDERED.

Dated:  September 5, 2019       _____
                                 SENIOR DISTRICT JUDGE