1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DEERPOINT GROUP, INC.,                    Case No.  1:18-cv-00536-JLT-BAM

12              Plaintiff,                      **ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**

13         v.                                   (Docs. 263, 265)

14   AGRIGENIX, LLC, et al.                     **ORDER SETTING STATUS CONFERENCE**

15              Defendants.
                                                DATE: September 3, 2024
16                                              TIME: 1:00 p.m.
17                                              COURT: Hon. Barbara A. McAuliffe

18

19          Pending before the Court are the parties' cross motions for summary judgment.  On

20   September 7, 2023, Plaintiff Deerpoint Group, Inc. ("Plaintiff" or "Deerpoint") filed its motion

21   for summary judgment.  (Doc. 263.)[1]  On September 11, 2023, Defendant Mahoney filed his

22   motion for summary judgment.  (Doc. 265.)[2]  The parties filed their respective oppositions and

23

24   _____

     [1] Documents from the CM/ECF docket are referenced throughout this order by their CM/ECF docket
25   number and CM/ECF pagination.

26   [2] Defendant Mahoney's motion is labeled "Defendants Agrigenix and Sean Mahoney's Memorandum of
     Points and Authorities in Support of Their Motion for Summary Judgment," and Defendant Mahoney
27   elsewhere refers to both himself and Defendant Agrigenix, LLC ("Defendant Agrigenix" or "Agrigenix")
     in his briefing. (Doc. 265-1.)  However, as default was entered against Defendant Agrigenix, the Court
     considers the cross-motions for summary judgment as regarding Defendant Mahoney only.  (Docs. 259,
28   260.)

                                                1

replies, and the motions have been fully briefed.  (Docs. 271-272, 276-277, 284.)  The Court took the matter under submission.  Local Rule 230(g).

Having carefully considered all of the parties' briefing and the record in this case, and for the reasons detailed below, Plaintiff's motion for summary judgment will be DENIED, and Defendant Mahoney's motion for summary judgment will be GRANTED in part and DENIED in part.

## I.      BACKGROUND

This case has been pending for several years and in the interest of brevity, the Court highlights pertinent parts of the case background.

Plaintiff is in the business of chemical water treatment solutions for agricultural irrigation and alleges that Defendant Mahoney, one of its former employees, launched Defendant Agrigenix, LLC as a direct competitor to Plaintiff using Plaintiff's confidential, proprietary, and trade secret information.  On April 18, 2018, Plaintiff filed this action against Defendant Agrigenix and Mahoney alleging claims for trade secret misappropriation, false advertising, two claims for breach of contract, two related claims for breach of the covenant of good faith and fair dealing, intentional interference with prospective economic advantage, and unfair competition. (Doc. 1.)  Plaintiff filed the operative Second Amended Complaint on February 24, 2020, alleging eight claims for relief, described more particularly below.  (Doc. 82.)

After the Court scheduled the case and opened discovery, numerous discovery disputes arose between the parties, which the Court resolved.  The disputes culminated in Plaintiff 's motions for sanctions against Agrigenix and Mahoney.  (Doc. 168.)  On October 31, 2022, the Court issued an order granting Plaintiff's motion for sanctions and recommending that adverse jury instructions be provided at trial.  (Doc. 218.)  The Court recommended that the instructions should: (1) acknowledge that Agrigenix and Mahoney had a duty to preserve evidence relating to Plaintiff's complaint; (2) inform the jury that Agrigenix and Mahoney failed to preserve and produce electronically stored information, which resulted in the "spoliation of evidence"; (3) instruct the jury that as a result of this spoliation of evidence, the jury should presume that the

contents of the electronically stored information would have been favorable to Plaintiff and unfavorable to Defendants; (4) instruct the jury on what the absent evidence would show: (a) that the spoliated evidence contained confidential, proprietary, and trade secret information belonging to Deerpoint with respect to the formulation, manufacture, cost, and pricing of Deerpoint products and with respect to Deerpoint customers; and at the trial judge's discretion, that (b) Mahoney and Agrigenix used documents containing Deerpoint's confidential, proprietary, and trade secret information to advance the business of Agrigenix to the detriment of Deerpoint.  (*Id.* at 39-40.)

On July 28, 2023, the Court entered a stipulated order in which the parties agreed to dismiss Agrigenix's counterclaims against Deerpoint with prejudice and granted the stipulated entry of default against Defendant Agrigenix.  (Doc. 259.) The stipulated order directed the clerk of court to enter default in favor of Plaintiff with respect to the First Claim for Trade Secret Misappropriation, the Second Claim for Trade Secret Misappropriation, the Third Claim for false advertising, the Seventh Claim for unfair competition, and the Eighth Claim for patent infringement.  (Doc. 259.)  The Court noted that its order did not resolve Plaintiff's claims against Defendant Mahoney.  (*Id.* at 2.)

On September 7 and September 11, 2023, Plaintiff and Defendant Mahoney filed their cross-motions for summary judgment.  (Docs. 263, 265.)  These parties filed their respective oppositions on October 13, 2023, and replies on November 13, 2023.  (Docs. 271-72, 276-77.)  Defendant Mahoney filed a Motion for Sanctions on November 13, 2023 that has been fully briefed and will be addressed by separate order.  (Doc. 275, 281, 286.)  The motions were pending before District Judge Jennifer L. Thurston.  On September 13, 2023, the cross-motions for summary judgment and associated request to seal were subsequently reassigned to Magistrate Judge Barbara A. McAuliffe pursuant to the parties' consent.  (Doc. 267.)

On May 1, 2024, the Court convened a status conference to address potential resolution of this matter and the related matter, *Deerpoint Group, Inc. v. GAR Bennett LLC* (1:23-cv-1340-JLT-BAM).  (Doc. 295.)  However, the parties informed the Court that the parties in the instant case had not settled, and the thereafter, Court took the parties' cross-motions under submission.  (*Id.*)

1    The cross-motions for summary judgment have substantively similar arguments and

2    overlapping issues.  Therefore, the parties' positions will be addressed collectively below.

3    **II.      EVIDENTIARY OBJECTIONS**

4          As a preliminary matter, Defendant Mahoney raises numerous objections to Plaintiff's

5    statement of undisputed facts and to the evidence supporting Plaintiff's opposition to Defendant

6    Mahoney's motion for summary judgment, based on lack of foundation, lack of personal

7    knowledge, hearsay, and relevance that are duplicative of the summary judgment standard itself.

8    (Doc. 272-5, Doc. 276-2.)  Plaintiff opposes these objections.  (Doc. 277-1.)

9          The Court declines to address these objections individually but notes that when evaluating

10   a motion for summary judgment, a court "cannot rely on irrelevant facts, and thus relevance

11   objections are redundant."  *Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119

12   (E.D. Cal. 2006).  In addition, "improper legal conclusions... are not facts and likewise will not be

13   considered on a motion for summary judgment."  *Id.*; *see also Sandoval v. Cnty. of San Diego*,

14   985 F.3d 657, 665 (9th Cir. 2021) (finding that district court abused its discretion where it

15   sustained "boilerplate one-word objections for 'relevance,' 'hearsay' and 'foundation' in motion

16   for summary judgment).  In the analysis below, the Court relies only upon any evidence that may

17   be presented in an admissible form at trial in evaluating the merits of the motion for summary

18   judgment.  *See* Fed. R. Civ. P. 56(c)(2); *see also Sali Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1005

19   (9th Cir. 2018) ("the court must review the evidence in light of what would be admissible before

20   either the court or jury" [citation omitted]); *Burch*, 433 F. Supp. 2d at 1119-1120 (even if

21   evidence is presented in a form that is currently inadmissible, it may be considered on a motion

22   for summary judgment so long as the admissibility defects could be cured at trial).  Toward that

23   end, the objections to any evidence cited below—particularly as to objections related to

24   admissibility— are overruled.

25         The Court now turns to the parties' cross motions for summary judgment.

26   **III.    LEGAL STANDARD FOR SUMMARY JUDGMENT**

27         Summary judgment is appropriate when the pleadings, disclosure materials, discovery,

28   and any affidavits provided establish that "there is no genuine dispute as to any material fact and

4

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact is one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.*  Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof.  *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.*  (citing *Celotex*, 477 U.S. at 323).  In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.*

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in original).  "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. *Id.* at 929; *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted).  "Where the record taken as a whole could not lead a rational

5

trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).  Where, as here, the parties cross-move for summary judgment on a claim, the court is required to review the evidence submitted by the parties in support of their own motions and in opposition to the opposing party's motion in deciding each summary judgment motion.  *Fair Hous. Council of Riverside Cty., Inc., v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (finding district court was required to review the evidence properly submitted in support of plaintiffs' motion for summary judgment to determine whether it presented a disputed issue of material fact precluding summary judgment on defendants' motion for summary judgment); *Poway Unified Sch. Dist.*, 658 F.3d 954, 960 (9th Cir. 2011) (stating court considers each party's evidence on cross motions to evaluate whether summary judgment was appropriate).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence."  *Soremekun,* 509 F.3d at 984.  Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor."  *Anderson,* 477 U.S. at 255.  Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn.  *See Richards v. Nielsen Freight Lines*, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

A party demonstrates summary adjudication is appropriate by "informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

///

///

///

## IV.   CROSS-MOTIONS FOR SUMMARY JUDGMENT[3]

Plaintiff's operative Second Amended Complaint alleges claims arising under federal and state laws, including: (1) Trade Secret Appropriation against Defendant Agrigenix pursuant to 18 U.S.C. §§ 1836 et seq.; (2) Trade Secret Misappropriation pursuant to Cal. Civ. Code §§ 3426 et seq. against Defendant Agrigenix; (3) False Advertising pursuant to 15 U.S.C. § 1125(a) against Defendant Agrigenix; (4) Breach of Secrecy Agreement against Defendant Mahoney; (5) Breach of Settlement Agreement against Defendant Mahoney; (6) Intentional Interference with Prospective Economic Advantage against Defendants Agrigenix and Mahoney; (7) Unfair Competition pursuant to Cal. Bus. Prof. Code §§ 17200 et seq. against Defendants Agrigenix and Mahoney; and (8) Patent Infringement against Defendants Custom AG, Agrigenix, and Mahoney. (Doc. 82.)

Plaintiff now moves for summary judgment on the Fourth and ~~Fifth~~ claims for relief against Defendant Mahoney: Breach of Secrecy Agreement and Breach of Settlement Agreement, and also on Defendant Mahoney's affirmative defenses to patent infringement on the basis that there are no genuine disputes of fact.  (Doc. 263.)  In Defendant Mahoney's cross-motion, Defendant Mahoney moves for summary judgment on Plaintiff's Fourth through Eighth claims for relief: Breach of Secrecy Agreement, Breach of Settlement Agreement, Intentional Interference with Prospective Economic Advantage, Unfair Competition, and Patent Infringement, on the basis that Plaintiff has not provided sufficient evidence to demonstrate a genuine dispute of material fact on those claims.  (Doc. 265.)

In the interest of judicial economy, the Court elects to bifurcate adjudication of the claims and only addresses the parties' motions regarding the Fourth, Fifth, Sixth, and Seventh claims for relief in this order.  The Court will later rule on the parties' arguments regarding the Eighth claim for patent infringement and Defendant Mahoney's affirmative defenses of validity and

---

[3] The Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties.  Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

1  eforceability regarding Plaintiff's '179 patent, as well as Defendant Sean Mahoney's Motion for

2  Sanctions Pursuant to Federal Rule of Civil Procedure 11.  (*See* Doc. 263 at 23-27; Doc. 265-1 at

3  14-20, Doc. 275.)

4      **A. The Parties' Prior Settlement Agreement Resolving Mahoney's Employment**

5          **Dispute with Plaintiff**

6      As a preliminary matter, the parties agree they signed a "Confidential Settlement

7  Agreement and General Release" on January 8, 2018 (the "Settlement Agreement").  (*See* Doc.

8  263-2 at 4-17; Doc. 263 at 11-12; Doc. 265-1 at 11-12.)  This Settlement Agreement resolved a

9  prior state court lawsuit initiated by Mahoney against Deerpoint and others when he departed

10  employment at Deerpoint.  This Settlement Agreement is the basis for Plaintiff's motion for

11  summary judgment.  In particular, the general release in the Settlement Agreement is at issue in

12  the claims for Breach of the Secrecy Agreement and Breach of the Settlement Agreement.

13      In the Settlement Agreement, the parties agreed to a "Complete General Release" which

14  releases the parties "from any and all actions, causes of action, obligations, costs, expenses,

15  damages, losses, claims, liabilities, suits, debts, demands, and benefits (including attorneys' fees

16  and costs), of whatever character, in law or in equity, known or unknown, suspected or

17  unsuspected, matured or unmatured, of any kind or nature whatsoever, based on any act,

18  omission, event, occurrence, or nonoccurrence from the beginning of time to the date of execution

19  hereof, including but not limited to any claims or causes of action arising out of or in any way

20  relating to Plaintiff's employment, his alleged contract claims, or which have been or could have

21  been made in the [state] Lawsuit (collectively 'the claims') as well as any threatened claims in

22  any cross-complaint or counterclaims."  (Doc. 263-2 at 7.)  The Settlement Agreement also

23  provided an "Agreement Not to Infringe or Misappropriate [Deerpoint]'s Intellectual Property,"

24  in which Defendant Mahoney acknowledged that he had access to Plaintiff's confidential,

25  proprietary, or Trade Secret information, would not disclose or use said information, and would

26  return Plaintiff's tangible and intangible property.  (*Id.* at 10-12.)

27      When the scope of the Settlement Agreement was raised in an earlier motion to dismiss in

28  this case, Judge Ishii interpreted the Settlement Agreement and held that there "is actually no

1   dispute that the Settlement is broad and releases all claims that Deerpoint and Mahoney had

2   against each other, whether known or unknown, that existed on or before January 8, 2018." (Doc.

3   26 at 9.)  Judge Ishii concluded, "for the sake of clarity, to the extent that the Complaint may be

4   read to include any claims by Deerpoint against Mahoney that existed on or before January 8,

5   2018, those claims will be dismissed without leave to amend." (*Id.*)

6        The Court therefore proceeds on the claims with the understanding that claims prior to

7   January 8, 2018 have been dismissed.

8        **B.  Plaintiff's Motion for Summary Judgment on Fourth Claim for Relief –**

9            **Defendant Mahoney's Breach of Secrecy Agreement**

10        In its fourth claim for relief, Plaintiff alleges that Defendant Mahoney breached a Secrecy

11   Agreement that he signed on May 9, 2016 as part of his employment with Plaintiff. (Doc. 82 ¶¶

12   113-122.)  Plaintiff contends that Deerpoint and Defendant Mahoney entered into a written

13   contract titled "Deerpoint Group, Inc. Employees Invention and Secrecy Agreement" ("Secrecy

14   Agreement") on May 9, 2016. (*See* Doc. 82 at 42-49, Doc. 92 ¶¶ 53, 114.)  Generally, by the

15   terms of the Secrecy Agreement, Mahoney agreed that items such as products, equipment, data

16   sheets, reports, memoranda, notes, records, plots, sketches, plans and other tangible items to

17   which he had access as a direct result of his employment with Deerpoint are the exclusive

18   property of Deerpoint and that he could not make such items available to third parties without the

19   express authorization of Deerpoint. (Doc. 82 ¶¶ 116.)  Plaintiff contends that it is entitled to

20   summary judgment for Breach of the Secrecy Agreement as no genuine dispute of material fact

21   exists given the Secrecy Agreement, Plaintiff's performance of its obligations, and Defendant

22   Mahoney's breach of the Secrecy Agreement. (Doc. 263 at 15-20.)  Defendant Mahoney

23   responds that this claim fails because Plaintiff did not perform on its obligations to employ

24   Defendant Mahoney, and there is no evidence that Defendant Mahoney breached the Secrecy

25   Agreement. (Doc. 272 at 15-23.)

26        "To prevail on a cause of action for breach of contract, the plaintiff must prove (1) the

27   contract, (2) the plaintiff's performance of the contract or excuse for nonperformance, (3) the

28   defendant's breach, and (4) the resulting damage to the plaintiff." *Lair v. Bank of Am.*, N.A., No.

1 | 5:23-CV-1345-WLH-SHK, 2024 WL 943945, at *2 (C.D. Cal. Jan. 26, 2024) (citing *Richman v.*
2 | *Hartley*, 224 Cal. App. 4th 1182, 1186 (2014)).

### 1.  Existence of Contract

Plaintiff contends that Deerpoint and Defendant Mahoney entered into a written contract titled "Deerpoint Group, Inc. Employees Invention and Secrecy Agreement," the Secrecy Agreement, on May 9, 2016.  (*See* Doc. 82 at 42-49, Doc. 92 ¶¶ 53, 114.)  Defendant Mahoney does not dispute that the Secrecy Agreement existed between the parties.  (*See* Doc. 272-6 ¶ 1.)  There is therefore no genuine dispute that the first element of the claim is met.

### 2.  Performance or Excused Nonperformance

Plaintiff next contends that Plaintiff performed its obligations under this agreement by employing Defendant Mahoney until his resignation.  (Doc. 82 at 44, Doc. 168-41 ¶ 6.)  Defendant Mahoney disputes this fact, arguing that he was wrongfully terminated rather than resigning, and therefore Plaintiff did not perform on the Secrecy Agreement.  (Doc. 272 at 15, 272-6 ¶ 2.)  In support, Defendant Mahoney submits a declaration in which he states that in "early October of 2017, [he] caused an employment lawsuit to be filed against Plaintiff…  In response, the next day Plaintiff's owners had the HR director escort [him] out of [his] own office… [and] had the HR director drive [him] home."  (Doc. 272-4 ¶ 7.)

The parties ultimately settled the employment claims.  In the resulting Settlement Agreement between Plaintiff and Defendant Mahoney, the parties resolved the employment dispute and any other potential claims the parties had against each other.  Also in that Settlement Agreement, Defendant Mahoney acknowledged that the Secrecy Agreement remained in full effect despite Defendant's resignation or termination.  (Doc. 263-2 at 10-11) ("14.3. Acknowledgement of [Deerpoint]'s Confidential, Proprietary, and Trade Secret Information. Plaintiff acknowledges that he had occasion to access, acquire, and generate knowledge and information related to [Deerpoint]'s business and technology, which [Deerpoint] maintains as confidential or proprietary in order to maintain its competitive value. Plaintiff further acknowledges that [Deerpoint] considers this information proprietary.")

In an earlier order on Defendant's initial motion to dismiss, the Court noted that,

1  "[b]ecause Mahoney's misappropriation of trade secrets is clearly a material breach of the

2  [Secrecy Agreement], Deerpoint technically had the option to terminate the contract," but

3  "Reaffirmation of the relevant portions of the [Secrecy Agreement] indicates that the various

4  obligations of the [Secrecy Agreement] remain in effect, irrespective of any contrary argument

5  that might have otherwise been possible from the Settlement." *Deerpoint Grp., Inc. v. Agrigenix,*

6  *LLC,* 345 F. Supp. 3d 1207, 1227 (E.D. Cal. 2018). Thus, the Secrecy Agreement remained in

7  effect, and Defendant Mahoney is incorrect that he was excused from its obligations.

8                          **3.  Breach of Contract**

9          Plaintiff contends that Defendant Mahoney breached the Secrecy Agreement by retaining

10  Plaintiff's materials after he departed from Deerpoint. (Doc. 263 at 16-17, Doc. 277 at 6-9.)

11  Plaintiff cites evidence forensically obtained from laptops used by former employees of

12  Defendant Agrigenix and offers declarations from Plaintiff's founders suggesting that Defendant

13  Mahoney retained Plaintiff's protected materials. (*Id.*)

14          Defendant, in turn, contends that there is no evidence that Defendant Mahoney took or

15  used Plaintiff's confidential proprietary, confidential, and/or trade secret information. (Doc. 265-

16  1 at 11-12, Doc. 272 at 15-23.) Defendant further contends that any conduct predating January 8,

17  2018 has been released as part of Plaintiff's Settlement Agreement with Defendant Mahoney.

18  (*Id.*)

19          The Secrecy Agreement signed by Defendant Mahoney provides, in relevant part:

20              I agree that unless I have received authorization from Company to
21              do so I shall not either during or after my employment with
                Company (a) disclose to any third party, (b) use, or (c) publish any
22              information which is secret and confidential to Company. Such
                information, it is understood, may include, but is not limited to,
23              knowledge and data relating to processes, machines, compounds
                and compositions, formulas, business plans, and marketing and
24              sales information originated, owned, controlled or possessed by
                Company and which give Company an opportunity to obtain an
25              advantage over its competitors. I further understand that as a guide I
                am to consider information originated, owned, controlled, or
26              possessed by Company which is not disclosed in printed
                publications stated to be available for distribution outside Company
27              as being secret and Confidential to Company. In instances wherein
28

11

> doubt exists in my mind as to whether information is secret and
> Confidential to Company, I will request an opinion, in writing,
> from Company.
>
> I agree that items (including but not limited to, products,
> equipment, data sheets, reports, memoranda, notes, records, plots,
> sketches, plans and other tangible items) which I possess or to
> which I am given access to as a direct result of my employment
> with Company shall at all times be recognized as the exclusive
> property of Company. I further agree that at no time, without
> express authorization from Company, shall I make such items
> available to third parties and that I shall upon leaving the employ of
> Company, deliver promptly to Company any such items (including
> copies thereof) which I have in my possession.

(Doc. 82 at 43-44).  In short, the Secrecy Agreement prohibits Plaintiff from disclosing, using, or publishing Plaintiff's confidential information.  *Id.*

A review of Plaintiff's cited evidence and the record demonstrates that there is a genuine dispute of fact regarding breach.  For instance, Plaintiff cites email messages forensically recovered by Plaintiff's expert between Agrigenix employees as showing Defendant Mahoney's breach of the Secrecy Agreement.  (Doc 263-6 at 18-19, 20-25, 26-29, 38-43, 44-48, 49-51, 52-81, 84-87.)  However, the email messages and documents cited are largely from the period in which Defendant Mahoney and Plaintiff released claims in the Settlement Agreement; claims predating January 8, 2018.  *See* Doc. 263-6 at 18-19 (November 13, 2017 message between Agrigenix employee Graham Towerton and Mahoney); Doc. 263-6 at 20-25 (email messages between Mahoney and Towerton dated November 7, 2017, November 9, 2017, and December 11, 2017); Doc. 263-6 at 26-29 (emails between Towerton and Agrigenix employee Eva Kwong)[4]; Doc. 263-6 at 38-43) (emails between Towerton and Kwong, including an attachment, dated between November 22 and November 27, 2017); Doc. 263-6 at 44-48 (emails between Towerton and Kwong dated November 27, 2017); Doc. 263-6 at 49-51 (email between Towerton and

---

[4] Plaintiff submits the declaration of Plaintiff's co-owner and President Deborah Miller in which she notes that the November 17, 2017 emails between Kwong and Towerton identify products that "appear to be ones in high demand by Deerpoint customers at and during growing seasons prior to November 2017." (Doc. 263-3 ¶ 18.)  As the Court concludes that Defendant Mahoney was released from all claims on or before January 8, 2018, this evidence also does not support Plaintiff's conclusion that Defendant Mahoney breached the Secrecy Agreement.

12

1  Kwong dated November 27, 2017.); Doc. 263-6 at 52-81 (presentation document entitled

2  "Agrigenix LLC Launch and Corporate Structure (investor version)" dated November 2017)[5];

3  Doc. 263-6 at 84-87 (emails and two attachments between Mahoney and Kwong dated December

4  13, 2017)[6].  In its ruling on an earlier motion to dismiss, the Court found that there "is actually no

5  dispute that the Settlement is broad and releases all claims that Deerpoint and Mahoney had

6  against each other, whether known or unknown, that existed on or before January 8, 2018."  (Doc.

7  26 at 9.)  The Court concluded, "for the sake of clarity, to the extent that the Complaint may be

8  read to include any claims by Deerpoint against Mahoney that existed on or before January 8,

9  2018, those claims will be dismissed without leave to amend."  (*Id.*)

10          Plaintiff does not dispute that claims which existed on or before January 8, 2018 were

11  released, but contends that due to the reaffirmance of the Secrecy Agreement, Defendant

12  Mahoney remains liable if he took Plaintiff's protected information and then failed, on a

13  continuing basis, to return the information and notes in its reply that Defendant Mahoney also

14  used Plaintiff's confidential information after January 8, 2018.  (Doc. 263 at 20, Doc. 277.)  The

15  Court agrees that Defendant Mahoney remains liable for retaining Plaintiff's materials after

16  January 8, 2018, but Plaintiff released potential claims arising on or before January 8, 2018.

17  (Doc. 26 at 9.)  Plaintiff only submitted evidence of Agrigenix employees' use of potentially

18  protected information <u>before the release date</u>.[7]  (Doc 263-6 at 18-19, 20-25, 26-29, 38-43, 44-48,

19  _____

20  [5] Mrs. Miller also states that the November 2017 presentation recovered by Plaintiff's forensic expert
     (Doc. 263-6 at 52-81) "describes what is essentially a clone of Deerpoint."  (Doc. 263-3 ¶ 17.)  She states
21  that Agrigenix's products cover those in high demand from Deerpoint, and Agrigenix's sample customers
     were significant Deerpoint customers as of October 2017 or high priority prospective customers.  (*Id.*)  As
22  the Court concludes that Defendant Mahoney was released from all claims on or before January 8, 2018,
     this evidence does not support Plaintiff's conclusion that Defendant Mahoney breached the Secrecy
23  Agreement.
     [6] Plaintiff submits a declaration from Plaintiff's CEO and co-owner John Miller, in which he notes that the
24  attachments "disclose a few items of Deerpoint confidential and trade secret information," and describes
     how the attachments contain Plaintiff's confidential information.  (Doc. 210-1 ¶¶ 6-7.)  As the Court
25  concludes that Defendant Mahoney was released from all claims on or before January 8, 2018, this
     evidence does not support Plaintiff's conclusion that Defendant Mahoney breached the Secrecy
26  Agreement.

27  [7] An email dated January 9, 2018 between Defendant Mahoney and potential investor Cameron Dunn is
     included in Plaintiff's supporting evidence.  (Doc. 263-6 at 89.)  However, as the content of the email does
28  not indicate it included Plaintiff's protected materials and the attachments to the email are not viewable,

1   49-51, 52-81, 84-87.).  Therefore, Plaintiff has not carried its burden Mahoney breached the

2   Secrecy Agreement.

3        Plaintiff also argues that the information found by Plaintiff's forensic recovery expert

4   "remained in Mahoney's possession or under his control (as owner and CEO of Agrigenix) and

5   was accessible to him directly… into 2021, when employees departed with their laptops."  (Doc.

6   277 at 7-8.)  In support, Plaintiff cites exhibits to Plaintiff's motion for sanctions.  (Docs. 168-1,

7   168-26, 168-27).  These exhibits include March 4, 2019 emails between Agrigenix employee

8   Towerton and IT support Chris Martinez, in which Towerton requests that Defendant Mahoney

9   be given access to various Agrigenix folders.  (Doc. 168-26.)  These exhibits also include a

10  screenshot of Agrigenix's cloud file storage which Plaintiff's counsel states was included in the

11  March 4, 2019 email.  (Doc. 168-1 ¶ 22, 168-27.)  However, neither of these exhibits show

12  Plaintiff's confidential materials within those folders, Defendant Mahoney's retention of the

13  forensically retrieved materials, or Defendant Mahoney's involvement.  This evidence therefore

14  fails to support that "no reasonable trier of fact could find other than for the moving party."

15  *Soremekun*, 509 F.3d at 984 ("the movant must affirmatively demonstrate that no reasonable trier

16  of fact could find other than for the moving party").

17       Plaintiff also argues that Defendant Mahoney "continued to [maintain possession and

18  control over Plaintiff's materials] for years afterward as demonstrated by files recovered in 2022

19  from laptops used by Agrigenix personnel.  (Doc. 263 at 17.)  However, beyond an apparent

20  reference to the materials discussed by Plaintiff's forensic expert, Plaintiff does not cite specific

21  evidence demonstrating that Defendant Mahoney possessed or used Plaintiff's materials after

22  January 8, 2018.  (*See* Doc. 263[8], 277.)  Plaintiff's evidence fails to support summary judgment

23  for Plaintiff on this claim.

24       Plaintiff next cites Agrigenix employee Graham Towerton's "Worklists and Logbook"

25  ─────────────────

26  this email also does not show a breach of the Secrecy Agreement.  (*Id.,* Doc. 263-5 ¶ 17.)
    [8] For example, the exhibits referenced by Plaintiff predate January 8, 2018.  *See, e.g.* Doc. 263-6 at 19

27  (email dated November 13, 2017); Doc. 263-6 at 21 (email dated November 7, 2017).  The content of the
    January 9, 2018 email noted as Exhibit 14 does not indicate it included Plaintiff's protected materials and
    the attachments to the email are not viewable, this email also does not show a breach of the Secrecy

28  Agreement.  (Doc. 263-6 at 89, Doc. 263-5 ¶ 17.)

1    documents as showing that Mr. Towerton used Deerpoint's chemical composition information to

2    blend Deerpoint's fertilizers and Deerpoint's foliar "replacements," and thus a reasonable trier of

3    fact would conclude that Mahoney directed Mr. Towerton in these actions.  (Doc. 277 at 9).  Mr.

4    Towerton's notes for "1/10/18" list "Blend [Deerpoint]PG 0-21-0 w/- Formic... 0-10-0 w/-

5    Formic" and Mr. Towerton's notes for "2/6/18" list "Formulate MTEK 240,330,420

6    replacements."  (Doc. 271-2 at 13-14.)  However, Plaintiff does not directly connect Mr.

7    Towerton's lists or apparent actions to Defendant Mahoney's use or possession of Plaintiff's

8    material, and this evidence therefore does not support summary judgment.  Plaintiff asks the

9    Court to infer Mr. Towerton acted at Mahoney's direction, but a reasonable trier of fact could

10   conclude the opposite inference that Mr. Towerton did not act at Mahoney's direction.

11       As part of its argument, Plaintiff contends that Towerton acted at the direction of

12   Defendant Mahoney and therefore Towerton's notes regarding "[Deerpoint]" and "MTEK"

13   blends show Defendant Mahoney's use of Plaintiff's materials.  (Doc. 277 at 9 n. 5.)  To show

14   that Defendant Mahoney was liable due to his direction of Defendant Agrigenix's employees,

15   Plaintiff refers to its argument in its opposition to Defendant Mahoney's motion for summary

16   judgment.  (Doc. 271 at 13-15.)  However, Plaintiff's opposition simply notes that "a jury could

17   reasonably find Mahoney liable for wrongful acts of others at Agrigenix because he knowingly

18   consented to, approved, directed, and/or authorized their retention and use of [Deerpoint]

19   confidential, proprietary, and trade secret information" and re-cites prior cited evidence.  (*Id*.)

20   The lack of further evidence regarding Defendant Mahoney's authorization or direction of Mr.

21   Towerton, along with Plaintiff's assertion that a question remains as to Defendant Mahoney's

22   authorization and direction of Agrigenix employees fails to show that no reasonable trier of fact

23   could find other than for the moving party.  Summary judgment based upon Defendant

24   Mahoney's alleged authorization of Mr. Towerton is therefore inappropriate.

25       Plaintiff further cites evidence of a January 2018 meeting in which Plaintiff contends that

26   Defendant Mahoney and another Agrigenix employee shared a "list containing confidential

27   information about the customer's specially designed [Deerpoint] fertilizers" with a Deerpoint

28   customer.  (Doc. 277 at 8-9.)  In support of this contention, declarant Nick Marchini stated that

1    Defendant Mahoney met with him in "early to mid-January" 2018 and "handed [him] a product

2    list that was identical to that of Deer Points, so much so that it had 2 products listed that I had

3    custom made for one of my orchards that no other Deer Point customer used.  I made the

4    comment to him that it looks like a Deer Point Product list, don't you think you should change it

5    up a little, to set yourself apart.  He just copied Deer Point."  (Doc. 271-6 ¶ 2.)  Mr. Marchini

6    further wrote that "Later on that year," Defendant Mahoney "offered to sell [him] some products

7    that were just like Deer Point's formulations, so much so he said they are 'just like Deer Points.'"

8    (*Id.* ¶ 3.)  Plaintiff further cites testimony from Agrigenix employee Nolan Sorenson that Mr.

9    Sorenson had presented Mr. Marchini with a pricing comparison of "relatively where competitor

10   products would be and then where our products are" in the form of a paper document.  (Doc. 200-

11   1 at 34-35.)  Sorenson testified that he could not remember who was involved in the pricing

12   comparison or whether Deerpoint pricing was on the comparison list, but that there was pricing of

13   a competitor on the list that Sorenson provided to Mr. Marchini.  (*Id.* at 35.)

14        In response, Defendant highlights that there is no evidence that the January 2018 meeting

15   occurred after January 8, 2018 or that the product list contained products that were Plaintiff's

16   exclusive products.  (Doc. 276 at 7-8.)  Indeed, it is unclear whether the meeting between

17   Defendant Mahoney and Mr. Marchini took place after the Settlement Agreement release date of

18   January 8, 2018, as Mr. Marchini stated that he met with Defendant Mahoney in "early to mid-

19   January."  (Doc. 271-6 ¶ 2.)  Second, it is unclear from the cited declaration and testimony

20   whether the materials shared with Mr. Marchini were indeed Plaintiff's confidential materials.

21   (Doc. 200-1 at 34-35, Doc. 271-6.)  As there is insufficient clarity regarding whether the January

22   2018 meeting involving a product list occurred before potential claims were released and whether

23   the January 2018 and later 2018 meetings involved Plaintiff's confidential information, a genuine

24   dispute of material fact remains on the issue of breach.

25        Plaintiff additionally contends that a declaration from Plaintiff's CEO and co-owner Mr.

26   Miller demonstrates that possession and use of Deerpoint's confidential information continued

27   into 2018 and beyond.  (Doc. 263 at 18.)  In support, Mr. Miller states, without further

28   clarification, that Defendant Mahoney "had and retained the confidential information about

16

Deerpoint's use of… key additives," and cites examples after the January 8, 2018 Settlement Agreement release date in which he alleges that Defendant used formulations that were identical to Plaintiff's foliar product formulations or fertilizer formulas and Defendant's manufacturing instructions selected the same materials as Plaintiff's product blend sheets.  (Doc. 263-2 at 49, submitted under seal.)  However, Mr. Miller notes regarding the material selection, "a matter of logic and common sense, the odds of this happening without copying Deerpoint confidential information are essentially zero."  (*Id.*)  He further notes that it "is theoretically possible to use the percentage information appearing on [Plaintiff's product] label to calculate the amount of each element to add to the mixture in order to manufacture the formula."  (*Id.*)

Defendant responds that the NPK fertilizer blends Plaintiff claimed to own are well-known in the industry and that Mr. Miller admitted that it was possible to use the percentage of information on Deerpoint's product label to calculate the amount of each element to add to the mixture in order to manufacture the formula.  (Doc. 272 at 11-12, Doc. 276 at 7.)  The lack of evidence that Defendant Mahoney retained Plaintiff's confidential information and Mr. Miller's statements that other methods beyond using Plaintiff's materials could have led to Agrigenix's identical products do not permit the Court to conclude that Defendant Mahoney breached the Secrecy Agreement by using Plaintiff's confidential information.  Therefore, a genuine dispute of material fact remains on this issue.

Plaintiff fails to show that no genuine dispute of material fact remains as to Defendant Mahoney's breach of the Secrecy Agreement.  Accordingly, summary judgment on this claim is DENIED.

### C.  Plaintiff's Motion for Summary Judgment on Fifth Claim – Defendant Mahoney's Breach of Settlement Agreement

For its Fifth claim, Plaintiff alleges that Defendant Mahoney breached the Settlement Agreement with Plaintiff.  (Doc. 82 ¶¶ 123-133, Doc. 263-2 at 4-17)  Specifically, Plaintiff alleges that on January 8, 2018, Deerpoint and Defendant Mahoney entered into a Confidential Settlement Agreement and General Release in which Defendant Mahoney acknowledged that he had access to Plaintiff's confidential, proprietary, or Trade Secret information, would not disclose

17

or use said information, and would return Plaintiff's tangible and intangible property.  (*Id., See* Doc. 263-2 at 10-12.)

As stated above, "[t]o prevail on a cause of action for breach of contract, the plaintiff must prove (1) the contract, (2) the plaintiff's performance of the contract or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damage to the plaintiff."  *Lair*, 2024 WL 943945, at *2 (C.D. Cal. Jan. 26, 2024).

**1.  Existence of Contract**

The parties agree that the Settlement Agreement was executed.  (*See* Doc. 263 at 21; Doc. 272 at 15.)

**2.  Performance or Excused Nonperformance**

Plaintiff contends that it paid the required settlement sum to Defendant Mahoney and therefore fulfilled its Settlement Agreement performance.  (Doc. 263 at 21.)  Defendant Mahoney asserts that Plaintiff did not perform on the Settlement Agreement and his obligations are excused, as Section 20 of the Settlement Agreement requires that parties resolve any claims arising from it through binding arbitration rather than through litigation.  (Doc. 272 at 15; Doc. 263-2 at 13.)  In support, Defendant Mahoney cites a California Supreme Court case and a California Court of Appeal case in which summary judgment was granted after defendants raised the existence of an arbitration agreement.  *See Charles J. Rounds Co. v. Joint Council of Teamsters*, 4 Cal. 3d 888 (1971); *24 Hour Fitness, Inc. v. Super Ct*., 66 Cal. App. 4th 1199 (1998). Plaintiff responds that Defendant Mahoney has waived his right to arbitration and that the cases cited in support of summary judgment on the Settlement Agreement claim for relief are inapposite.  (Doc. 277 at 14 n. 9.)

The cases cited by Defendant Mahoney do not support his argument that he is excused from his Settlement Agreement obligations and that he should be granted summary judgment on this claim.  In *Rounds*, the California Supreme Court held that:

> *where the only issue litigated is covered by the arbitration clause*, and where plaintiff has not first pursued or attempted to pursue his arbitration remedy, it should be held that (1) plaintiff has impliedly waived his right to arbitrate, such that defendant could elect to submit the matter to the jurisdiction of the court; (2) defendant may

> also elect to demur or move for summary judgment on the ground
> that the plaintiff has failed to exhaust arbitration remedies; and (3)
> defendant may also elect to move for a stay of proceedings pending
> arbitration if defendant also moves to compel arbitration. Plaintiff
> may of course sue preliminarily to enforce its arbitration rights.

*Rounds*, 4 Cal. 3d at 899 (emphasis added).  The court in *24 Hour Fitness* followed *Rounds*,

stating the question was "whether a defendant as to whom all claims are arbitrable may be

precluded from seeking summary judgment on that basis because the plaintiff has also raised non-

arbitrable claims against other defendants" and concluding that the presence "of nonarbitrable

claims against some defendants should not defeat the right of others to seek summary judgment

on the basis that all claims against them are subject to arbitration."  *24 Hour Fitness*, 66 Cal. App.

4th at 1208.  These cases clarify that, under California law, a defendant is only entitled to

summary judgment based upon an arbitration agreement if all claims against that defendant are

subject to arbitration.

Additionally, the courts in *Rounds* and *24 Hour Fitness* clarify the factual circumstances

in which their rules applied.  In *Rounds*, the California Supreme Court noted that in the California

Courts of Appeal cases it followed,

> the fact situation was similar to the one at bar: Plaintiff had sued on
> the contract rather than arbitrate and had never sought to pursue its
> arbitration remedy. Moreover, each and every issue alleged in
> plaintiff's cause of action could have been settled through
> arbitration procedures. Finally, defendant did not waive its right to
> arbitration, but consistently asserted failure to pursue arbitration as
> an affirmative defense.

*Rounds*, 4 Cal. 3d at 895.  The facts of *24 Hour Fitness* were procedurally like *Rounds*.  During

pre-filing discussions, defendant had advised plaintiff's attorneys "several times that her claims

were subject to the arbitration agreement."  *24 Hour Fitness,* 66 Cal. App. 4th at 1206.  After the

complaint was filed, defendants moved for summary judgment on the ground that plaintiff's

claims were covered by her agreement to arbitrate.  *Id.*  In both cases, defendants quickly moved

for summary judgment or asserted an affirmative defense based upon the arbitration agreement.

Here, only Plaintiff's breach Settlement Agreement claim is covered by the Settlement

Agreement's arbitration clause, while Plaintiff's other claims for relief are not arbitrable,

19

1   including the Secrecy Agreement breach, Intentional Interference with Prospective Economic

2   Advantage, and Unfair Competition claims.  This case is therefore unlike the plaintiffs' claims in

3   *Rounds* and *24 Hour Fitness*, which were completely covered, as to at least some defendants, by

4   an arbitration agreement.  *See Rounds*, 4 Cal. 3d, *24 Hour Fitness,* 66 Cal. App. 4th.

5          Furthermore, this case is procedurally unlike *Rounds* and *24 Hour Fitness*.  While Plaintiff

6   sued on the Settlement Agreement rather than going through arbitration, Defendant Mahoney did

7   not consistently assert Plaintiff's failure to pursue arbitration as an affirmative defense.  Instead,

8   Defendant Mahoney's answers and motions to dismiss do not mention arbitration.  (Docs. 10, 30,

9   51, 92.)  Defendant Mahoney's only reference to arbitration was made in a September 26, 2018

10  joint scheduling report, at which time Defendant Mahoney's initial motion to dismiss was

11  pending.  (Doc. 17 at 4.)  In that report, Defendants noted that "Defendants have yet to answer

12  Deerpoint's Complaint as Defendants' motion to dismiss (ECF 10) remains pending. If made to

13  answer, Defendants may lodge counterclaims and/or may file a petition to compel arbitration of

14  some or all of the causes of action in the Complaint."  (*Id.*)  However, Defendant Mahoney's

15  subsequent motion to dismiss and answers do not raise arbitration as an affirmative defense or as

16  a basis for dismissal, and a motion to compel arbitration was never filed.  (*See* Docs. 30, 51, 92.)

17  Defendant Mahoney only raised this argument five years into litigating this case.  (*See* Doc. 272.)

18  This case is therefore unlike *Rounds* and the cases supporting its reasoning, where defendants

19  consistently asserted failure to pursue arbitration as an affirmative defense.  *See Rounds*, 4 Cal. 3d

20  at 894-95.  It is additionally unlike *24 Hour Fitness*, where a defendant immediately informed the

21  plaintiff that her claims were covered by an arbitration agreement and quickly moved for

22  summary judgment on that basis.  *24 Hour Fitness,* 66 Cal. App. 4th at 1206.  Accordingly,

23  Defendant Mahoney's cited cases do not support his position that he is excused from his

24  obligations under the Settlement Agreement.

25          **3.  Defendant's Breach**

26          Plaintiff contends that Defendant Mahoney breached the Settlement Agreement when he:

27  (1) "violated Paragraph 14.3 of the Settlement Agreement by breaching his Secrecy Agreement as

28  detailed in the preceding section of this brief"; (2) "violated Paragraph 14.4 by failing to act as a

fiduciary with respect to [Deerpoint] confidential, proprietary, and trade secret information—at a minimum by not taking steps to prevent use of [Deerpoint]s protected information by Agrigenix"; and (3) "violated Paragraph 14.5 of the Settlement Agreement by failing to return [Deerpoint] material in his possession and by providing a sworn declaration in which he stated falsely that he had not provided [Deerpoint] confidential, proprietary, or trade secret information to anyone." (Doc. 263 at 21-22.)

However, Plaintiff's contention that Defendant Mahoney retained or disclosed Plaintiff's protected information is based upon the same evidence submitted for the breach of the Secrecy Agreement. (*Id.*) The Court found above that, based on the evidence presented predating January 8, 2018 and the record, there remained a genuine issue of material fact whether Defendant Mahoney used or disclosed confidential, proprietary, or trade secret information. (*See* Doc. 200-1 at 34-35; Doc. 263-2 at 49; Doc. 271-6,) Given that Plaintiff relies upon the same evidence of Defendant Mahoney retaining, using, or disclosing Plaintiff's protected information, Plaintiff again fails to show there is no dispute of material fact as to breach of the Settlement Agreement. Accordingly, Plaintiff's motion for summary judgment as to the Settlement Agreement is DENIED.

**D. Defendant's Motion for Summary Judgment – Federal Rule of Civil Procedure 56(d) Does Not Prevent Defendant Mahoney From Moving for Summary Judgment on Intentional Interference and Unfair Competition Claims**

Plaintiff contends that Defendant's motion should be denied as Federal Rule of Civil Procedure 56(d) permits the Court to defer or deny Defendant's motion for summary judgment due to Defendant Mahoney's spoliation of ESI. (Doc. 271 at 8-11.) Defendant responds that Plaintiff has not followed the requirements of Federal Rule 56(d) to include an affidavit or declaration specifying the facts that cannot be presented which are essential to the opposition. (Doc. 276 at 4.)

Rule 56(d) provides that if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take

1    discovery; or (3) issue any other appropriate order."  Fed. R. Civ. P. 56(d).  In assessing an earlier

2    version of Federal Rule 56(d), the Ninth Circuit has held that the "burden is on the party seeking

3    additional discovery to proffer sufficient facts to show that the evidence sought exists… and that

4    it would prevent summary judgment." *Nidds v. Schindler Elevator Corp*., 113 F.3d 912, 921 (9th

5    Cir. 1996) (citing *Qualls v. Blue Cross of California, Inc*., 22 F.3d 839, 844 (9th Cir.1994).).  The

6    Ninth Circuit further held that the supporting "affidavit must identify "the specific facts that

7    further discovery would reveal, and explain why those facts would preclude summary judgment."

8    *Tatum v. City & Cty. of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006).

9          As the Court has denied Defendant's motion for summary judgment as to the breach of

10   Secrecy Agreement and Settlement Agreement on other grounds, the Court addresses this Federal

11   Rule 56(d) argument regarding the intentional interference and unfair competition claims.

12   Plaintiff contends that proving intentional interference and unfair competition "rest in part on

13   statements made to customers," but "spoliation of ESI has resulted in scant production of any

14   customer communications," and "Defendants spoliated not merely information contained on

15   computers used by Mahoney, but also information contained on those of all other Agrigenix

16   personnel responsible for sales activity." Doc. 263 at 7 n.9. For example, Mahoney bragged about

17   meeting with growers (Doc. 163-6 at 89), but because of Defendants' destruction of ESI "it is not

18   even possible to determine who Mahoney and others spoke with or when, let alone what was

19   said." (Doc. 271 at 10.)

20         Here, Plaintiff has not met its burden to show that the specific evidence exists or that it

21   would prevent summary judgment. *Nidds*, 113 F. at 921, *Tatum*, 441 F.3d at 1100.  Plaintiff

22   argues generally that these claims "rest in part on statements made to customers" and alludes to

23   Defendant Mahoney's meetings with growers but does not identify specific evidence about

24   Defendant Mahoney's interference with Plaintiff's relationships with those growers or provide

25   facts to demonstrate that such evidence existed.  (Doc. 271 at 10.)  Plaintiff also does not clarify

26   why it could not obtain evidence of Defendant Mahoney's interference with its customer and

27   business relationships by other means.  ESI is not the only means for Plaintiff to prove its claim.

28   Furthermore, Plaintiff does not provide supporting affidavits or declaration, only a declaration

1  from counsel Jon Michaelson stating that evidence found confirms "that spoliation included a

2  considerable volume of ESI relevant to misappropriation of Deerpoint confidential and trade

3  secret information pertaining to fertigation equipment." (*See* Doc. 271; Doc. 271-1 ¶ 5.)  This is

4  insufficient to satisfy the requirement that Plaintiff show "by affidavit or declaration" that it lacks

5  the specific facts to support its intentional interference and unfair competition claims for relief.

6  Accordingly, the Court declines to apply Federal Rule 56(d) to deny Defendant Mahoney's

7  motion for summary judgment as to Plaintiff's intentional interference and unfair competition

8  claims.

9      In its argument, Plaintiff also cites the Ninth Circuit holding that, under an earlier version

10  of Federal Rule 56(d), "parties opposing a motion for summary judgment must make '(a) a timely

11  application which (b) specifically identifies (c) relevant information, (d) where there is some

12  basis for believing that the information sought actually exists.'"  *Blough v. Holland Realty, Inc*,

13  574 F.3d 1084, 1091 n. 5 (9th Cir. 2009).  Plaintiff further cites two district court cases which it

14  contends support denial of Defendant Mahoney's motion based on the Court's previous order.

15  *See Posner v. Hillstone Rest. Grp., Inc*., No. 219CV00507TLNKJN, 2022 WL 705602, at *6–7

16  (E.D. Cal. Mar. 9, 2022); *CTC Glob. Corp. v. Huang*, No. SACV1702202AGKESX, 2019 WL

17  4565180, at *2 (C.D. Cal. Aug. 7, 2019).

18      However, *Blough* aligns with other Ninth Circuit case law requiring to specifically

19  identify relevant information and provide a basis for believing that the information sought

20  actually exists via affidavit or declaration.  *Blough*, 574 F.3d at 1091 n.5, *Nidds*, 113 F. at 921,

21  *Tatum*, 441 F.3d at 1100.  *Blough* is also distinguishable from *Posner*, in which the district court

22  found that there was specific evidence that the plaintiff could have offered absent defendant's

23  spoliation that would demonstrate a key part of the claim.  *Posner*, No. 2:19-cv-00507-TLN-KJN,

24  2022 WL 705602, at *9 (E.D. Cal. Mar. 9, 2022) ("Here, the best evidence Plaintiff had available

25  would have been the video evidence showing the events prior to Plaintiff's slip. However, due to

26  Defendant's actions or inactions, this evidence is no longer available to Plaintiff.") Here, Plaintiff

27  has not identified via affidavit or declaration specific information that would have been key to

28  Defendant's intentional interference and unfair competition claims.  Similarly, in *CTC Glob.*

23

1  *Corp.*, the district court found that there were "several categories of documents that [plaintiff] has

2  shown likely were (or are) in Defendants' possession, that haven't been produced in this case, and

3  that would be relevant to a computation of damages." *CTC Glob. Corp.*, No.

4  SACV1702202AGKESX, 2019 WL 4565180, at *2.  As Plaintiff has not shown via affidavits or

5  declarations that it cannot present facts essential to justify its opposition, the Court declines to

6  apply Federal Rule 56(d) in this instance.

7        **E.  Defendant's Motion for Summary Judgment – Plaintiff's Argument That**

8              **Defendant Mahoney is Automatically Liable For Agrigenix's Torts Fails**

9       Plaintiff also broadly opposes Defendant Mahoney's motion for summary judgment on the

10  grounds that Defendant Mahoney remains liable for Agrigenix's actions as the sole member and

11  manager of Agrigenix.  (Doc. 271 at 12-16.)  In support, Plaintiff cites the California Supreme

12  Court's holding that "Directors are liable to third persons injured by their own tortious conduct

13  regardless of whether they acted on behalf of the corporation and regardless of whether the

14  corporation is also liable." *Frances T. v. Vill. Green Owners Assn.*, 42 Cal. 3d 490, 504, 723 P.2d

15  573, 580 (1986).  This liability "does not depend on the same grounds as 'piercing the corporate

16  veil,' on account of inadequate capitalization for instance, but rather on the officer or director's

17  personal participation or specific authorization of the tortious act. *Id*.  In support of its argument,

18  Plaintiff contends that a jury could reasonably find Defendant Mahoney liable for others at

19  Agrigenix's wrongful acts because he consented to, approved, directed, and/or authorized their

20  retention and use of Deerpoint's information, largely repeating the same evidence that supported

21  Plaintiff's motion for summary judgment.  (Doc. 271 at 12-16, 21.)  However, as discussed

22  above, Plaintiff does not provide evidence regarding Defendant Mahoney's participation in or

23  specific authorization of others' tortious acts.  Accordingly, Plaintiff's argument that Defendant

24  Mahoney is automatically liable for other Agrigenix employees' torts is not a basis for denying

25  Defendant Mahoney's motion for summary judgment.

26        **F.  Defendant's Motion for Summary Judgment as to Fourth Claim – Breach of**

27              **Secrecy Agreement**

28       Defendant Mahoney contends that he is entitled to summary judgment on Plaintiff's

1   Breach of Secrecy Agreement claim because the parties' Settlement Agreement released causes

2   of action on or before January 8, 2018, and there is no evidence of post-January 8, 2018 wrongful

3   conduct.  (Doc. 265-1 at 11-12.)  Plaintiff responds that violations of the Secrecy Agreement

4   continued after the January 8, 2018 release date, including a January 2018 meeting between

5   Defendant Mahoney and a Deerpoint customer and a January 9, 2018 email between Defendant

6   Mahoney and a potential Agrigenix investor.  (Doc. 271 at 16-17.)

7        The Court previously assessed Plaintiff's cited evidence regarding these solicitations in

8   ruling on Plaintiff's motion for summary judgment for Breach of Secrecy Agreement. *See infra*.

9   However, in the context of Defendant's motion for summary judgment, and construing the

10  evidence in the light most favorable to Plaintiff, Plaintiff's evidence regarding the January 2018

11  meeting between Defendant Mahoney and Deerpoint customer Nick Marchini creates a genuine

12  issue of material fact.  Mr. Marchini stated that Defendant Mahoney met with him in "early to

13  mid-January" 2018 and "handed [him] a product list that was identical to that of Deer Points, so

14  much so that it had 2 products listed that I had custom made for one of my orchards that no other

15  Deer Point customer used.  I made the comment to him that it looks like a Deer Point Product list,

16  don't you think you should change it up a little, to set yourself apart.  He just copied Deer Point."

17  (Doc. 271-6 ¶ 2.)  Mr. Marchini further wrote that "Later on that year," Defendant Mahoney

18  "offered to sell [him] some products that were just like Deer Point's formulations, so much so he

19  said they are 'just like Deer Points.'"  (*Id.* ¶ 3.)

20       While Defendant responds that there is no evidence that the January 2018 meeting

21  occurred after January 8, 2018 or that the product list contained products that were Plaintiff's

22  exclusive products, Plaintiff's evidence suggests that at some point in January 2018 and later in

23  2018, Defendant Mahoney met with a Deerpoint customer and may have used Deerpoint's

24  protected information.  Plaintiff has therefore raised a genuine dispute of material fact on the

25  breach of the Secrecy Agreement by using Deerpoint's protected information.

26       Plaintiff additionally cited Mr. Miller's declaration as demonstrating that Agrigenix's

27  similar or identical products that were available after the Settlement Agreement release date

28  demonstrated that Defendant Mahoney still possessed or used Deerpoint's protected material.

25

1   (Doc. 263 at 18, Doc. 263-2 at 49.)  Defendant responds that the NPK fertilizer blends Plaintiff

2   claimed to own are well-known in the industry and that Mr. Miller admitted that it was possible to

3   use the percentage of information on Deerpoint's product label to calculate the amount of each

4   element to add to the mixture in order to manufacture the formula.  (Doc. 272 at 11-12, Doc. 276

5   at 7.)  Given Defendant Mahoney's prior access to Deerpoint materials and the potential for

6   Agrigenix's similar or identical products to have come from the use of Deerpoint materials,

7   Plaintiff has raised an additional genuine dispute of material fact on the breach of the Secrecy

8   Agreement.  As a genuine dispute of material fact remains regarding this claim, Defendant

9   Mahoney is not entitled to summary judgment for Breach of Secrecy Agreement.

10      Accordingly, Defendant Mahoney's motion for summary judgment for Breach of Secrecy

11   Agreement is DENIED.

12      **G.  Defendant's Motion for Summary Judgment as to Plaintiff's Fifth Claim –**

13      **Breach of Settlement Agreement**

14      Defendant Mahoney also argues that he is entitled to summary judgment on Plaintiff's

15   Breach of Settlement Agreement claim, as this claim is duplicative of Plaintiff's Breach of

16   Secrecy Agreement.  (Doc. 265-1 at 12.)  Defendant Mahoney contends that there is no evidence

17   that he took or used Plaintiff's protected materials.  (*Id.*)  Plaintiff responds that the Settlement

18   Agreement expanded Defendant Mahoney's obligations with respect to Plaintiff's protected

19   materials and contends that Defendant Mahoney remains liable and violated the Settlement

20   Agreement as he failed to return documents, failed to act as a fiduciary relative to Plaintiff's

21   information, and lied in his sworn statement about not conveying Plaintiff's information to

22   anyone.  (Doc. 271 at 18-19.)

23      Again, the parties rely upon the same evidence to show breach by Defendant Mahoney's

24   retention or use of protected materials.  As the Court previously determined that Plaintiff's

25   evidence of the January 2018 and later 2018 meeting between Defendant Mahoney and Mr.

26   Marchini raised a genuine dispute of material fact regarding breach, Defendant Mahoney is not

27   entitled to summary judgment on the Breach of Settlement Agreement claim for relief.

28      Accordingly, Defendant Mahoney's motion for summary judgment for Breach of

1    Settlement Agreement is DENIED.

2       **H.  Defendant's Motion for Summary Judgment as to Sixth Claim – Intentional**

3          **Interference with Prospective Economic Advantage**

4          Plaintiff pleads an Intentional Interference with Prospective Economic Advantage

5    ("IIPEA") claim that Defendants Agrigenix and Mahoney interfered with Plaintiff's prospective

6    economic advantage as to various relationships with Plaintiff's customers.  (Doc. 82 ¶¶ 134-140.)

7    Defendant Mahoney moves for summary judgment, contending that Plaintiff released all claims

8    against Defendant Mahoney on or before January 8, 2018, and Defendant Mahoney did not

9    disparage Plaintiff or its owners to Plaintiff's customers after January 8, 2018 and that Plaintiff

10   cannot show the required independent wrongful act.  (Doc. 265-1 at 12-13.)  Plaintiff opposes this

11   motion, responding that Defendant Mahoney's false or disparaging statements create an

12   independent wrongful act.  (Doc. 271 at 19-22.)[9]

13          As Plaintiff would have the burden of proof on this claim at trial, Defendant "can prevail

14   merely by pointing out that there is an absence of evidence to support the nonmoving party's

15   case."  *Soremekun*, 509 F.3d at 984.  The elements of an IIPEA claim are: "(1) an economic

16   relationship between the plaintiff and some third party, with the probability of future economic

17   benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional wrongful

18   acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5)

19   economic harm proximately caused by the defendant's actions."  *Roy Allan Slurry Seal, Inc. v.*

20   *American Asphalt South, Inc*., 2 Cal.5th 505, 512, 213 Cal.Rptr.3d 568, 388 P.3d 800 (2017).  An

21   IIPEA plaintiff must allege that the defendant "engaged in an independently wrongful act in

22   disrupting the relationship."  *O'Connor v. Uber Techs., Inc.,* 58 F. Supp. 3d 989, 996 (N.D. Cal.

23   2014) (quoting *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1145 (2004)).  "An act is 'independently

24   wrongful' if it is 'unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory,

25   common law, or other determinable legal standard.'"  *Id.*

26

27   [9] However, Plaintiff notes in its own motion for summary judgment that it is willing to dismiss the IIPEA
     claim for relief against Defendant Mahoney following a determination of damages for which Defendant
28   Agrigenix is responsible.  (Doc. 263 at 6 n. 2.)

In its opposition to Defendant Mahoney's motion for summary judgment, Plaintiff argued, generally, that the independent wrongful act element may be satisfied in many ways, and Plaintiff eventually focused its argument on an apparent Lanham Act violations.  (Doc. 271 at 19-22.)  Additionally, in its Second Amended Complaint, Plaintiff alleges that Defendants Mahoney and Agrigenix's statement "about Deerpoint and its products and services were untrue or misleading, and made to influence or tend to influence the decisions by Deerpoint's former customers to move their business to Agrigenix."  (Doc. 82 ¶ 138.)  While Plaintiff initially contends that Defendant Mahoney "interfered with its prospective economic advantage by making disparaging statements and by making false comparisons of their products to those of DPG" and appears to suggest a false statement of fact is generally actionable under common law, Plaintiff does not clarify if Plaintiff is alleging defamatory statements as the underlying wrongful act.  The Court therefore applies a Lanham Act analysis because an element of a Lanham Act claim is a false statement of fact, and Plaintiff does not clearly define any other potential independent wrongful acts. (Doc. 271 at 19-22.)

The elements of a Lanham Act claim are:

(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product;

(2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience;

(3) the deception is material, in that it is likely to influence the purchasing decision;

(4) the defendant caused its false statement to enter interstate commerce; and

(5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Southland Sod Farms v. Stover Seed Co*., 108 F.3d 1134, 1139 (9th Cir. 1997) (citing *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv., Inc*., 911 F.2d 242, 244 (9th Cir.1990)). To show a statement is false "within the meaning of the Lanham Act, a plaintiff may show that

the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Id.* (citing *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 943, 946 (3d Cir.1993)).

In determining whether there is an actionable statement of fact, courts differentiate between statements of fact, opinions, and puffery. *See Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008) ("the determination of whether an alleged misrepresentation 'is a statement of fact' or is instead 'mere puffery' is a legal question that may be resolved on a Rule 12(b)(6) motion.")  The Ninth Circuit has held that an actionable statement under the Lanham Act is "a specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1121 (9th Cir. 2021) (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 730 (9th Cir. 1999)); *see also Newcal*, 513 F.3d at 1053 (noting that "a statement that is quantifiable, that makes a claim as to the 'specific or absolute characteristics of a product,' may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery," and holding that a general assertion that a business provides its customers with low costs and flexibility was "classic puffery").  The Ninth Circuit has also held that "mere statements of opinion regarding future events" are generally not actionable, with the "well-established exception—if 'the speaker has knowledge of facts not warranting the opinion.'" *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 931 (9th Cir. 2010) (quoting *Richard P. v. Vista Del Mar Child Care Serv.*, 106 Cal. App. 3d 860, 866 (Ct. App. 1980)).

In its opposition, Plaintiff points to four groups of evidence that it asserts are false or misleading statements: (1) Defendant Mahoney's alleged statements to Plaintiff's employees; (2) marketing of Agrigenix products as "better" or "innovative"; (3) marketing of Agrigenix products by comparing itself to Deerpoint and listing product offerings that were not available; and (4) marketing of Agrigenix products by using the symbol ® on product lists and by offering services it did not actually provide.  (Doc. 271 at 20-22.)

First, Plaintiff's employee Jeff Carr states that he attended a November 2, 2017 meeting at which Defendant Mahoney invited Mr. Carr and other Deerpoint employees.  (Doc. 271-5 ¶¶ 2-

3.)  Mr. Carr states that at that meeting, Defendant Mahoney said that: "Deerpoint was a horrible place to work, that the Millers could not be trusted, that John Miller was crazy, and that Deborah Miller was a bitch. (Mahoney also said several much more nasty things about Mrs. Miller, but I don't feel comfortable reciting those in a written statement.)"  (*Id.* ¶ 4.)  Mr. Carr also states that Defendant Mahoney "explained that Deerpoint was in bad financial condition and things would only get worse because he left, because he would be hiring all of the most capable people from the company, and because he would be taking all of Deerpoint's customers for Agrigenix."  (*Id.*)  Mr. Carr further states that as Plaintiff's Director of Grower Relations, he had regular contact with Plaintiff's customers and began to see different attitudes from Deerpoint customers, including asking whether Deerpoint was financially sound, asking what it was like to work with Mrs. Miller, making comments that "[Mrs. Miller] must make it hard for you."  (*Id.* ¶ 11.)

Plaintiff does not show through this evidence that Defendant Mahoney made actionable statements of fact.  Claims based upon November 2, 2017 events are released by the Settlement Agreement.  (Doc. 26 at 9.)  Additionally, Defendant Mahoney's comment that Deerpoint was a "horrible place to work," his belief that the Millers could not be trusted, and his opinions regarding the Millers were all opinions rather than specific, measurable claims that were capable of being proved false.  *Arix*, 985 F.3d at 1121.  Defendant Mahoney's alleged comments that "Deerpoint was in bad financial shape and things would only get worse because he left" also appear to be non-actionable opinions and opinions regarding future events.  *PhotoMedex*, 601 F.3d at 931.  While the remainder of Mr. Carr's statement implies that Defendant Mahoney may have had other contact with Deerpoint customers after January 8, 2018, Mr. Carr and Plaintiff provide no evidence that Defendant Mahoney had that contact or said disparaging things to those customers.  (Doc. 271-5 ¶ 11.)  As Mr. Carr's declaration does not provide evidence that Defendant Mahoney made actionable statements of fact that are capable of being proven false, this evidence does not show a genuine dispute of material fact regarding the independent wrongful act element of the IIPEA claim.

Second, Plaintiff submits evidence that Defendant Agrigenix employee Sorenson was told to tell customers that Agrigenix products were "better" than Deerpoint's products and Agrigenix

promotional materials described its products as "innovative."  (Doc. 271 at 20-21.)  Plaintiff

points to testimony in which Mr. Sorenson testified that he was "told that our products were the

best" and he repeated that to customers.  (Doc. 200-1 at 30.)  Mr. Sorenson further testified that

he had no knowledge or understanding of why the Agrigenix's products were supposedly better

than Deerpoint's products but that Defendant Mahoney "would say our products were the best."

(*Id.*)  Plaintiff also points to an Agrigenix brochure listing products under the heading "Innovative

products," which is alongside other headings such as "Inspired people," "Incomparable services,"

and "Intelligent Equipment."  (263-2 at 31, 38.)

       Courts have held that, when "words like 'better' are used, statements are usually found to

be puffery unless the advertisement provides a means of quantifying what 'better' means."

*Hadley v. Kellogg Sales Co*., 273 F. Supp. 3d 1052, 1089 (N.D. Cal. 2017); *see Edmunson v.*

*Procter & Gamble Co*., 2011 WL 4041495, at *3 (S.D. Cal. Sept. 8, 2011) ("Plaintiff does not

allege that P & G's advertisements or packaging listed, referenced, or otherwise incorporated its

patents or any criteria for measuring a "better" shave."); *Southland*, 108 F.3d at 1145 (holding

"less is more" is not measurable and thus nonactionable puffery, while "50% less mowing" is "a

specific and measurable advertisement claim of product superiority based on product testing and,

as such, is not puffery"); *Oestreicher v. Alienware Corp*., 544 F. Supp. 2d 964, 973 (N.D. Cal.

2008), aff'd, 322 F. App'x 489 (9th Cir. 2009) ("generalized and vague statements of product

superiority such as "superb, uncompromising quality" and "faster, more powerful, and more

innovative than competing machines" are non-actionable puffery.")

       Here, Plaintiff provides no evidence that the adjective "better" was used by Defendant

Mahoney or Agrigenix in any quantifiable sense.  Plaintiff also provides no evidence that

"innovative" was used in any measurable, unambiguous sense, or that it had another purpose

beyond matching the other positive adjectives beginning with "I" that were in the brochure.  (*See*

Doc. 263-2 at 38 ("Innovative," "Inspired," "Intelligent".)  These items therefore do not rise

beyond non-actionable puffery and do not create a genuine dispute of material fact as to the

IIPEA independent wrongful act element.

       Third, Plaintiff attempts to construct a false statement from Plaintiff's brochure, claiming

1    that Defendant Mahoney and Agrigenix communicated that they "provided fertigation equipment

2    capable of performing the same functions that their target market of [Deerpoint] customers knew

3    to expect from [Deerpoint] White Boxes" while Agrigenix's products did not have the essential

4    capabilities of Deerpoint's White Boxes.  (Doc. 271 at 20-21; *see* Doc. 263-2 at 31, 38.)

5            However, even assuming Defendant's products did not offer the same capabilities as

6    Deerpoint's White Boxes, Plaintiff provides no evidence that the alleged comparative message

7    between Agrigenix's products and Deerpoint's products was communicated, that the statements

8    in the brochure deceived or had the tendency to deceive a substantial segment of the audience, or

9    that the deception was material.  *CytoSport, Inc. v. Vital Pharms*., *Inc*., 894 F. Supp. 2d 1285,

10   1295 (E.D. Cal. 2012) ("In order to survive summary judgment on a Lanham Act false

11   advertising claim, a claimant must show:… the statement actually deceives or is likely to deceive

12   a substantial segment of the intended audience;… [and] that the deception is material in that it is

13   likely to influence purchasing decisions").  The cited brochure does not mention Deerpoint's

14   White Boxes or Deerpoint generally.  (Doc. 263-2 at 31, 38.)  Beyond a vague statement that "No

15   other ag tech team has the scientific credibility, the farm experience or the proven track record of

16   Agrigenix," there is no reference to competitors.  (*Id.*)  Furthermore, while Plaintiff broadly

17   asserts that the brochure appealed to the "target market of [Deerpoint] customers," Plaintiff does

18   not cite any evidence of any customers or potential customers who interpreted this brochure in

19   this manner, were deceived by it, or affected by it in their purchasing decision.  Instead, Plaintiff

20   cites a declaration from farm manager Steve Ozuna, who states that Defendant Mahoney told him

21   in Spring 2018 that Agrigenix had "some boxes built with multiple pumps that could meter

22   multiple fertilizers at the same time, continuously throughout each irrigation set," and that "his

23   boxes were in beta phase testing with some of his old clients from Deerpoint."  (Doc. 271-7 ¶¶ 3-

24   4.)  However, Mr. Ozuna states that he was not contacted by Defendant Mahoney again on behalf

25   of Agrigenix following that initial call, and Mr. Ozuna did not appear to have done business with

26   Agrigenix or been influenced in his purchasing decision by speaking with Defendant Mahoney.

27   (*Id.*)  Mr. Ozuna's declaration also does not reference the marketing brochure cited by Plaintiff.

28   (*See* Doc. 271-7.)  As Plaintiff has not shown that the alleged false message actually deceived or

1    was likely to deceive a substantial segment of the intended audience or that the deception was

2    likely to influence purchasing decisions, this evidence does not demonstrate that there is a

3    genuine dispute of material fact as to a Lanham Act independent wrongful act. *CytoSport*, 894 F.

4    Supp. 2d at 1295.

5        Fourth, Plaintiff contends that Agrigenix advertised itself as having obtained trademark

6    registrations and offering products and services it could not provide.  (Doc. 271 at 21-22.)

7    Plaintiff cites materials from Defendant Agrigenix's marketing materials which "Quantum ®,"

8    "Fusion ®," and "Genesis ®" as Agrigenix products.  (Doc. 263-2 at 31, Doc. 271-2 at 20, 23.)

9    Plaintiff concludes that because Defendant Agrigenix never applied for or obtained registered

10   trademarks, this was a false statement of fact and therefore violated the Lanham Act.  (Doc. 271

11   at 21-22.)  Plaintiff also provides evidence that Agrigenix advertised products and capabilities

12   that it did not have.  *See*  (Doc. 263-2 at 31) (listing "Field Scouting: Certified Crop Advisor field

13   scouting, drone fly routes" as a service and InteliFeed and SmartCrop services including "Bubble

14   trailer or skid mount attachment capabilities"); (Doc. 200-1 at 28) (Agrigenix employee Sorenson

15   testifying that Agrigenix did not offer field scouting using drones and that he did not "know if

16   [Agrigenix] had all the things listed" under the Intelifeed and Smartscrop listings); (Doc. 200-1 at

17   68) (testimony that the Agrigenix box did not have "Bubble trailer or skid mount attachment

18   capabilities."); (Doc. 271-7 ¶¶ 3-4) (farm manager Ozuna stating that Defendant Mahoney told

19   him in Spring 2018 that Agrigenix had "some boxes built with multiple pumps that could meter

20   multiple fertilizers at the same time, continuously throughout each irrigation set," and that "his

21   boxes were in beta phase testing with some of his old clients from Deerpoint.")

22       Again, even assuming that the representation of registered trademarks and nonexistent

23   products were actionable false statements, Plaintiff does not attempt to show that the false

24   statement actually deceived or was likely to deceive a substantial segment of the intended

25   audience, or that the deception was likely to influence purchasing decisions.  The only potential

26   customer cited was Mr. Ozuna, who does not say that he was persuaded by Defendant Mahoney's

27   promotions or that Defendant Mahoney and Agrigenix's promotions influenced his purchasing

28   decisions.  (*See* Doc. 271-7.)  This evidence therefore does not demonstrate that there is a genuine

1   dispute of material fact regarding an independent wrongful act predicated on a Lanham Act claim.

2   *CytoSport*, 894 F. Supp. 2d at 1295.

3       As Plaintiff fails to provide evidence of either actionable false statements or audience

4   deception that would support the alleged Lanham Act violation, Plaintiff has not shown an

5   independent wrongful act under the IIPEA.  Because Plaintiff does not show that essential

6   element of an IIPEA claim, no genuine dispute of fact exists regarding Plaintiff's IIPEA claim for

7   relief and Defendant is entitled to summary judgment.  *O'Connor,* 58 F. Supp. 3d at 996.

8   Accordingly, Defendant's motion for summary judgment is GRANTED as to Plaintiff's Sixth

9   Claim for Relief for Intentional Interference with Prospective Economic Advantage.

10       **I.   Defendant's Motion for Summary Judgment as to Seventh Claim – Unfair**

11           **Competition**

12       Plaintiff pleads an Unfair Competition claim based upon the untrue and unfair prongs of

13   the UCL.  (Doc. 82 ¶¶ 141-148.)  Defendant contends that summary judgment is appropriate on

14   Plaintiff's Unfair Competition Law ("UCL") claim as it is entirely derivative of Plaintiff's IIPEA

15   claim for relief.  (Doc. 265-1 at 13-14.)  Defendant notes that the UCL claim is only as to

16   Defendant Mahoney given the default of Defendant Agrigenix.  (*Id.*)  Plaintiff argues that its UCL

17   claim has two predicates – an untrue or misleading statement theory and a false advertising in

18   violation of federal law theory.  (Doc. 82 ¶¶ 143, 145; Doc. 271 at 22-23.)

19       California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice."

20   Cal. Bus. & Prof. Code § 17200 *et seq*.  The three aforementioned "prongs" each maintain a

21   distinct theory of liability and basis for relief.  *See Cel-Tech Commc'ns, Inc. v. Los Angeles*

22   *Cellular Tel. Co*., 20 Cal. 4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999); see also *Lozano*

23   *v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).  Here, Plaintiff pleads a UCL

24   claim under the unlawful and unfair prongs.  (Doc. 82 ¶¶ 143, 145.)

25       **1.   Unlawful Prong**

26       "To state a claim under the unlawful prong of the UCL, a plaintiff must plead: (1) a

27   predicate violation, and (2) an accompanying economic injury caused by the violation."  *Shelton*

28   *v. Ocwen Loan Servicing, LLC*, No. 18-CV-02467-AJB-WVG, 2019 WL 4747669, at *10 (S.D.

1    Cal. Sept. 30, 2019).  "By proscribing any unlawful business practice, the UCL borrows

2    violations of other laws and treats them as unlawful practices that the unfair competition law

3    makes independently actionable." *Alvarez v. Chevron Corp*., 656 F.3d 925, 933 n.8 (9th Cir.

4    2011) (alterations and citations omitted).  "Virtually any law—federal, state or local—can serve

5    as a predicate for an action under [the UCL]." *Hadley v. Kellogg Sales Co*., 243 F. Supp. 3d

6    1074, 1094 (N.D. Cal. 2017) (quoting *Smith v. State Farm Mut. Auto. Ins. Co*., 93 Cal. App. 4th

7    700, 718, 113 Cal.Rptr.2d 399 (2001)).  Where an "unlawful" UCL claim sounds in fraud, it too

8    must meet Rule 9(b)'s pleading standards.  *Hadley*, 243 F. Supp. 3d at 1094.

9            Plaintiff here suggests that the predicate violations are: (1) false or misleading statements

10   and (2) false advertising in violation of federal law.  (Doc. 271 at 21-22.)[10]  While the UCL claim

11   is plead against Defendant Agrigenix and Defendant Mahoney, Defendant Mahoney agrees that

12   the seventh claim for relief "is against Mr. Mahoney, only, as default on the claim was entered

13   against Agrigenix based upon the settlement agreement with the bankruptcy trustee."  (Doc. 265-

14   1 at 14.)

15           Regarding the first predicate of false or misleading statements, Plaintiff again alleges a

16   Lanham Act violation, citing Mr. Carr's declaration regarding Mr. Mahoney's November 2017

17   statements. (Doc. 271-5 ¶¶ 4, 9.)  As discussed *supra*, Plaintiff does not provide evidence of

18   actionable statements of fact after the January 8, 2018 Settlement Agreement release date.  (*Id.*)

19   Accordingly, the alleged false or misleading statements do not support a predicate violation.  *See*

20   *Arix*, 985 F.3d at 1121; *PhotoMedex*, 601 F.3d at 931.

21           Regarding the second predicate of false advertising, Plaintiff argues that Defendant

22   Mahoney remains individually liable by, "for example, by directing Sorensen to tell growers that

23   Agrigenix products were 'better' than those of [Deerpoint]."  (Doc. 271 at 22.)  Plaintiff then

24   repeats the other alleged examples of false advertising used to support its IIPEA claim for relief.

25   (*Id.*)  However, as the Court already rejected Plaintiff's Lanham Act theory based upon the same

26

---

27   [10] Plaintiff again appears to assert that "untrue or misleading statements" are generally actionable.  (Doc.
     271 at 22-23.)  The Court will again analyze these predicates in the context of the Lanham Act as Plaintiff
28   does not identify a more specific predicate.

                                                    35

1    cited evidence, the evidence does not support a false advertising UCL predicate violation.

2    Plaintiff has therefore failed to show a genuine dispute of material fact regarding the unlawful

3    prong of its UCL claim.

4              **2. Unfair Prong**

5              California courts employ three different tests in determining whether a business practice is

6    "unfair" under the UCL: the balancing test, the FTC test, and the public policy test.  *See Allen v.*

7    *Hyland's, Inc*., No. CV 12-1150 DMG (MANx), 2016 WL 4402794, at *3 (C.D. Cal. Aug. 16,

8    2016).  The balancing test determines whether the alleged practice is immoral, unethical,

9    oppressive, unscrupulous, or substantially injurious to consumers and requires the court to weigh

10   the utility of the defendant's alleged conduct against the gravity of the harm to the alleged victim.

11   *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257, 106 Cal.Rptr.3d 46 (2010).

12   The FTC test draws on the definition of unfair appearing in § 5 of the Federal Trade Commission

13   Act and requires that: (1) the consumer injury be substantial; (2) the injury must not be

14   outweighed by any countervailing benefits to consumers or competition; and (3) it must be an

15   injury that consumers themselves could not reasonably have avoided.  *Drum*, 182 Cal. App. 4th at

16   257, 106 Cal.Rptr.3d 46. Finally, the public policy test requires that the public policy which is a

17   predicate to a consumer unfair competition action under the "unfair" prong of the UCL must be

18   tethered to specific constitutional, statutory, or regulatory provisions.  *Id*. at 256, 106 Cal.Rptr.3d

19   46.

20             While Plaintiff states that it pleads an unfair UCL theory in its complaint, its moving

21   papers and the record do not show evidence corresponding to any of these tests.  (*See*, *e.g.*, Docs.

22   263, 271, 277.)  Plaintiff's evidence does not show a substantial harm to consumers resulting

23   from Defendant Mahoney's or Agrigenix's actions and Plaintiff does not identify a public policy

24   tethered to specific constitutional, statutory, or regulatory provisions.  (*Id.*)  As Plaintiff has failed

25   to show unfairness under any of the tests, Plaintiff does not demonstrate that a genuine dispute of

26   material fact exists regarding the unfair prong of the UCL.

27             As Plaintiff has not shown evidence that a genuine dispute of material fact remains

28   regarding its UCL claim, Defendant Mahoney's motion for summary judgment as to Defendant

1    Mahoney on Plaintiff's UCL claim is GRANTED.

2    **V.        CONCLUSION AND ORDER**

3          For the reasons stated, IT IS ORDERED THAT:

4       1.   Plaintiff's Motion for Summary Judgment as to the Fourth and Fifth Claims for Relief

5            (Doc. 263) is DENIED;

6       2.   Defendant's Motion for Summary Judgment (Doc. 265) is GRANTED in part and

7            DENIED in part as follows:

8               a.   Defendant Mahoney's motion for summary judgment on Plaintiff's Fourth

9                    Claim for Relief for Breach of Secrecy Agreement is DENIED;

10              b.   Defendant Mahoney's motion for summary judgment as to Plaintiff's Fifth

11                   Claim for Relief for Breach of Settlement Agreement is DENIED;

12              c.   Defendant Mahoney's motion for summary judgment as to Plaintiff's Sixth

13                   Claim for Relief for Intentional Interference with Prospective Economic

14                   Advantage is GRANTED;

15              d.   Defendant Mahoney's motion for summary judgment as to Plaintiff's Seventh

16                   Claim for Relief for Unfair Competition is GRANTED; and

17      3.   The Court sets a Status Conference for **September 3, 2024, at 1:00 PM in**

18           **Courtroom 8 (BAM) before Magistrate Judge Barbara A. McAuliffe** to address

19           the remaining claims in this action and the status of the case.  The parties shall appear

20           at the conference remotely either via Zoom video conference or Zoom telephone

21           number.  The parties will be provided with the Zoom ID and password by the

22           Courtroom Deputy prior to the conference.  The Zoom ID number and password are

23           confidential and are not to be shared.  Appropriate court attire required.

24
     IT IS SO ORDERED.
25

26     Dated:   __**August 23, 2024**__            ____/s/ _Barbara A. McAuliffe_____

27                                                  UNITED STATES MAGISTRATE JUDGE

28